Jones, Chief Judge,
delivered the opinion of the court:
Plaintiff brings this action to recover sums allegedly due it for having given training to veterans under the Servicemen’s Readjustment Act of 1944, as amended, Public Law 346, 58 Stat. 284, 38 U. S. C. 739 (1946 Ed.).
Plaintiff, a Massachusetts corporation, had its principal office in Boston, Massachusetts. It and its predecessor in 1943 gave two courses entitled “Elements of Plastics” with a tuition rate of $95 for a course of instruction of 64 hours, and “Elements of Plastics Drafting and Mold Design” with a tuition rate of $195 for a course of instruction of 199 hours. In February 1944 plaintiff added a third course entitled “Machine Drafting and Mold Design” with a tuition rate of $195 for a course consisting of 225 hours of instruction.
Early in 1946 plaintiff instituted a course of 52 weeks’ duration and 1,312 hours of instruction, entitled “Machine Drafting and Mold Design,” at a total charge of $784. Subsequently two further courses were added: “Machine Drafting,” a 52-week course, and “Piping Drafting,” likewise 52 weeks in duration. As of May 14,1948, plaintiff was charging $715 as tuition for the three afore-mentioned courses and between $40 and $48.73 each for books, supplies, and other expenses. On that date the Veterans Administration (VA) sent a letter to plaintiff tabulating plaintiff’s courses and the charges for each. The letter is reproduced in finding *97 6. Between May 14 and June 30,1948, plaintiff continued to be paid at the rates set forth in the letter.
On May 17, 1948, the VA promulgated a regulation, commonly referred to as Change 4 to Veterans Administration Manual M7-5, published in 13 F. R. 2695 et seq., subsequently issued in somewhat modified form and, as such, found in 38 C. F. R. 21.530, 21.570 (1949 Ed.). This regulation provided that, effective July 1, 1948, before payments for tuition and other charges were made to certain defined schools, it would be necessary to negotiate a contract between them and the VA. The VA determined that plaintiff was one of the schools covered by the new regulation and began negotiations for a contract with plaintiff. On July 26, 1948, plaintiff and the VA entered into a memorandum agreement by which plaintiff agreed to train veterans under the Servicemen’s Readjustment Act of 1944, supra, at rates to be mutually agreed upon in a formal contract. Despite many efforts the parties never came to an understanding on the rates. The VA submitted a contract for plaintiff’s execution based on a “fair and reasonable determination” of the tuition rate in the amount of $602.86 per year for the day courses and $284.87 per year for the night courses. The VA’s determination was made on the basis of cost data submitted by plaintiff.
The plaintiff refused to execute this contract, demanding instead $715 per year for the day courses and $357.50 per year for the night courses. For the period July 1, 1948, to August 23,1949, plaintiff has, at various times, received payments for tuition which in all totaled $115,969.29. Had plaintiff been paid at the rates in the proposed contract it would have received only $115,636.80. Plaintiff has been fully paid for books, supplies, and other incidental expenses incurred during this time.
On August 24, 1949, there was enacted Public Law 266, 63 Stat. 631, 653. Under the terms of that act the VA was to make fair and reasonable payments for tuition to any institutions that did not have a customary cost of tuition, as defined in the act. The VA determined that plaintiff was such an institution and that a fair and reasonable rate of tuition for plaintiff’s courses was $567.84 per student for *98 a 52-week course in the day school, and $283.92 per student for a corresponding course in the night school. Substantially similar provisions were enacted into law the following year by the act of July 13, 1950, Public Law 610, 64 Stat. 336. The VA continued its determination that a fair and reasonable rate of tuition for plaintiff’s courses was $567.84 and $283.92 for the day and night school courses, respectively. Plaintiff’s eligibility to train veterans was withdrawn on July 23, 1951. For the period August 24, 1949, to July 23, 1951, tuition payments were made to plaintiff at the rate of $567.84 per student for a 52-week course. Plaintiff claims these payments should have been at the rate of $715 per student per 52-week course. 'While the basis of payment for the corresponding night school courses is not entirely clear from the record, we assume that the VA paid plaintiff $283.92 per student for a 52-week course in the night school and that plaintiff is seeking payment at the rate of $357.50. For the period after August 23, 1949, to July 23, 1951, plaintiff claims the additional sum of $35,062.05.
Plaintiff presented its case to the Veterans’ Education Appeals Board under Public Law 610, supra. That Board found against it on the issues presented to it. We shall have occasion to mention this decision in greater detail.
Plaintiff’s principal contention is that the letter of May 14, 1948, constituted a contract between it and the Veterans Administration. The Board determined that it did not and we think the Board was right. A reading of the letter, set out in finding 6, clearly shows that no contract was intended, but rather an understanding between the parties as to what were the customary charges of the plaintiff. This conclusion finds further support in the internal directives of the VA pursuant to which the letter was sent. It is clear from them that the VA was simply making a determination of the plaintiff’s charges in the administration of the statutory mandate to pay “the customary cost of tuition.” Section 400 (b) of the Servicemen’s Readjustment Act of 1944, supra, provided, inter alia, that:
The Administrator shall pay to the educational or training institution, for each person enrolled in full time or part time course of education or training, the customary cost of tuition * * *
*99 We hold that plaintiff was paid the customary cost of tuition under the statute until July 1,1948.
Change 4, supra, became effective on that date. The relevant provisions of this regulation are set forth in finding 8. The VA determined that plaintiff was required to execute a contract under this regulation. The regulation provides that it will be necessary for a contract to be negotiated by the VA before payments for tuition, etc., are made to an institution training veterans under Public Law 346, supra, where, inter alia, a majority of the enrollment of the institution consists of veterans in training under Public Law 346 and Public Law 16 (the act of March 24, 1943, 57 Stat. 43) and where the institution has increased its charges to all students subsequent to June 22, 1944, to an amount which “in the judgment of the manager, appears to be an unreasonable amount for the services rendered.” Plaintiff has not produced evidence to show that the VA’s determination that plaintiff had increased its charges to an unreasonable amount was improper. As of May 15, 1948, of the 216 students enrolled in the plaintiff school, 214 were veterans and only two nonveterans. We think, therefore, that, under the regulation, plaintiff was required to sign a contract.
On July 26,1948, plaintiff did sign a memorandum agreement whereunder plaintiff was to educate Public Law 346 veterans enrolled in any approved course at plaintiff’s instition “for fees or charges to be determined in accordance with rules, regulations, and policies of the Veterans Administration until formal contract is negotiated.” Plaintiff claims the memorandum agreement was signed under duress. But since, under our view of the case, the resolution of this controversy between plaintiff and the defendant is not predicated upon it in any event, we need not pass on this question.
No formal contract was ever signed. On the basis of certain cost data submitted by plaintiff the VA determined a “fair and reasonable” tuition rate of $602.86 per student per year for the day school and $284.87 per student per year for the night school. It submitted to plaintiff for its execution a contract with these rates for the period July 1 to December 31, 1948. Plaintiff refused to sign the contract. Aside from the memorandum agreement there was no con *100 tract between plaintiff and the VA for the period July 1, 1948, to August 23, 1949. Plaintiff continued, however, to render services throughout this time and, under all the circumstances of the case, we feel it is entitled to fair and reasonable compensation for them.
Plaintiff did not produce any evidence to show that the VA’s determination of $602.86 as a fair and reasonable rate of compensation for the day school course was improper. The commissioner who heard the case has found, however, that the night school courses should have been paid for at a rate of $301.43. Since plaintiff’s night school courses were one-half as intensive as the day school courses, and since the night school rate in other dealings between the parties was always set at one-half the day school rate, we have adopted the commissioner’s finding.
Plaintiff has objected to the fact that the VA did not consider certain cost data submitted by it. These data were rejected on the ground that they overlapped the period for which the proposed contract was to run. We do not think plaintiff can complain of this fact unless it can show that the determination actually made was improper. It has not done so. We hold, therefore, that plaintiff is not entitled to recover in this action any further amounts for the services it rendered under Public Law 346, from July 1, 1948, to August 23,1949, with the exception of the additional amount for the night school in the net amount of $552.82 (see finding 22).
For the period August 24,1949, to July 12,1950, plaintiff’s rights to compensation for training veterans under Public Law 346, are governed by the provisions of Public Law 266, supra. Public Law 610, supra, is the applicable statute for the period July 13, 1950, to July 23, 1951. The provisions germane to the controversy here are substantially alike in both statutes. Our discussion of plaintiff’s points under one statute will therefore also cover the points it raises under the other.
The statutes provide in substance that the VA shall fix and pay a fair and reasonable rate of payment for tuition, fees, and other charges for courses taken by a veteran under Public Law 346, when the institution involved has no cus *101 tomary cost of tuition. The institution is defined as not having a customary cost of tuition when the majority of the students enrolled in the course in question consists of veterans under Public Law 346, or Public Law 16, supra, and when, inter alia, the institution has subsequent to June 22, 1944, increased its total tuition charges for the course to all students more than 25 percent, or the course (or a course of substantially the same length and character) was not provided for nonveteran students by the institution prior to June 22,1944.
The YA determined that plaintiff did not have a customary cost of tuition as defined by the statute. Plaintiff argues that this determination was erroneous because its long courses instituted after June 22, 1944, were merely extensions of the old short courses, and at a lower rate per hour. We need not decide this question since it is clear that courses of substantially the same length and character as those for which plaintiff is seeking payment were not offered prior to June 22, 1944. The enrollment apparently still was composed largely of veterans. We agree with the Board that under the statute plaintiff did not have a customary cost of tuition during the period August 24, 1949, to July 13, 1951.
Plaintiff contends, however, that both statutes had exemption clauses which made the provisions for fair and reasonable determinations inapplicable where one or more contracts providing a rate or rates of tuition have been entered into in two successive years. In such cases the rate established by the most recent contract is to be considered the customary cost of tuition. Contracts, within the intent of this particular provision, are defined as, inter alia, any other agreement in writing on the basis of which tuition payments have been made from the Treasury of the United States. Plaintiff contends that the letter of May 14, 1948, was such an agreement.
We do not think payments were made to plaintiff on the basis of the afore-mentioned agreement. Certainly if payments were made on the basis of the agreement, they were not made on this basis for any period other than the month and a half between May 14 and July 1, 1948. The proviso *102 is applicable only where contracts (including such agreements) have been entered into in two successive years. This obviously was not the case here.
Plaintiff contends, however, that the YA wrongfully refused to pay on the basis of the letter of May 14,1948, and that, but for this refusal, it would have had a much longer period of time during which it could have claimed that it had received payment pursuant to a written agreement. We have already held that, under its regulations, the YA properly required the plaintiff to enter into a contract for any services after July 1,1948. It follows, therefore, that plaintiff cannot claim that it should be treated as though it had received payment pursuant to the letter of May 14,1948.
Pursuant to the mandate of the statutes, the YA set the fair and reasonable rate at $567.84 per year for the day courses and $288.92 for the night courses. These rates were set on the basis of cost data for the period May 1, 1947, to April 30, 1948. Plaintiff then submitted cost data for the period November 1, 1947, to October 31, 1948, but the YA did not consider them, insisting that plaintiff should submit its most recent cost data. Plaintiff never submitted any later cost data to the Veterans Administration. It has failed to produce any evidence in this court establishing that the above-mentioned rates were not fair and reasonable. Under the circumstances, we think plaintiff has not shown that the determination of the YA was not proper.
Furthermore, plaintiff withdrew the issue of the reasonableness of the rates from consideration by the Board. It is therefore not in a position to raise the issue in this court.
Plaintiff also alleges that certain conversations Dr. Feener had with officials of the VA in 1950 gave rise to a contract between plaintiff and the Government. The record does not substantiate this allegation.
Plaintiff contends that the payments which the Government made to him were delayed, and he seeks interest on that account. This court cannot award interest unless a statute or a contract specifically so provides. 28 U. S. C. 2516 (1952 Ed.); United States v. N. Y. Rayon Co., 329 U. S. 654, 658. Since neither condition is present here, plaintiff cannot recover interest in this action.
*103 Plaintiff is entitled to recover the difference between the night school rate at which it was paid during the period July 1,1948, to August 23,1949 ($283.92), and the fair and reasonable rate of compensation of $301.43. An unpaid balance of $552.82 is due plaintiff on this account. In other respects plaintiff is not entitled to recover. Judgment will therefore be entered in favor of plaintiff in the amount of $552.82.
It is so ordered.
Laramore, Judge; Mabden, Judge; Whitaker, Judge; and Littleton, Judge, concur.
BINDINGS OB FACT
The court, having considered the evidence, the report of Commissioner Paul H. McMurray, and the briefs and argument of counsel, makes findings of fact as follows:
1. The plaintiff, Feener Technical Schools, Inc., a Massachusetts corporation, with its principal office located in Boston, Massachusetts, was engaged during the period in issue in the education and training of veterans under the provisions of Public Law 346, 78th Congress, enacted June 22, 1944, 58 Stat. 284,287,38 U. S. C. 739 (1946 Ed.).
2. The plaintiff school and its predecessor, in 1943, gave two courses entitled “Elements of Plastics” with a tuition rate of $95 for 64 hours of instruction, and “Elements of Plastics Drafting and Mold Design” with a tuition rate of $195 for 199 hours of instruction. The plaintiff school, in February 1944, added a third course entitled “Machine Drafting and Mold Design,” with a tuition rate of $195 for 225 hours of instruction. On March 1, 1946, the plaintiff received approval from the Department of Education, State of Massachusetts, for a course entitled “Machine Drafting and Mold Design,” of 52 weeks duration and 1,312 hours of instruction, at a total charge of $784. This was reduced shortly thereafter in order to comply with the limitation stated in Public Law 346, 78th Congress, 58 Stat. 289, of $500 for an ordinary school year which was defined as 34 weeks by Veterans Administration ^Regulations, and limited plaintiff’s charges to $764.40 for a 52-week calendar year. On July 23, *104 1947, the plaintiff received approval from the Department of Education, State of Massachusetts, for a 52-week course entitled “Machine Drafting,” which was in addition to a previously approved course in “Machine Drafting and Mold Design.” Effective- May 1, 1947, pursuant to the State Agency approval, the total charges of $763.73 for the course in “Machine Drafting and Mold Design” were separated into charges of $715 for tuition and $48.73 for books and supplies, and the course was increased to 1,352 hours. On February 24, 1948, plaintiff received authority from the State Approval Agency to add an additional course entitled “Piping Drafting” of 52 weeks length, with a rate of $715 for tuition and $48.73 for books and supplies. In April 1951 plaintiff received authority to give a similar course in “Piping Drafting” in the night school. The other two long courses had previously been authorized for the night school.
3. Public Law 346, supra, requires that schools providing education and training be paid their “customary cost of tuition.” The operating procedures of the Veterans Administration covering payment of tuition under Public Law 346 is contained in Veterans Administration Instruction No. 6 to Title II, Public Law 346, 78th Congress, 10 F. R. 4502; 38 C. F. R. 36.245 (1939 Ed. 1945 Supp.). This regulation defined “customary cost of tuition” as that charge made to non-veteran students. Section 36.245 of the Regulation reads in part as follows:
Authorisation for payment of tuition, incidental fees, and hooks, supplies, equipment, and other ea¡p.ensés. The manager of the Regional Office of the Veterans’ Administration is authorized to pay to the educational or training institution for each eligible person enrolled in a full-time or a part-time course of education or training such charges for tuition, incidental fees, necessary books, supplies, equipment, and other expenses as are customarily made other students pursuing the same or comparable courses except as otherwise stated in this instruction, and Provided, That such payment shall not exceed $500 for a full-time course for an ordinary school year.
4. Neither Public Law 346 nor its implementing Regulation, Instruction No. 6, supra, requires that the education *105 and training of veterans should be conducted under formal, written contracts, with the exception of short, intensive courses, and courses where the customary charge exceeds the rate of $500 for a full-time course for an ordinary school year. Schools training veterans under Public Law 846 were not required to sign contracts but were paid their customai’y cost of tuition as determined from catalogs or other publications of such schools. Section 36.246 (a) of the Regulation (Instruction No. 6) reads in part as follows:
Charges for tuition and fees, and boohs, supplies and equipment. Charges for tuition will be those customarily made other students pursuing the same or comparable courses, as set forth in the published catalogs or bulletins of the school or college, except as otherwise stated herein. In the event an institution does not publish a bulletin, a responsible official of the institution will individually certify to the manager of the Regional Office within whose territory the institution is located the customary charges for tuition for the courses offered.
Prior to July 1, 1948, the plaintiff school, since its customary charges did not exceed the rate of $500 for an ordinary school year, was not required under the applicable regulations to sign a formal contract but was paid its customary rates for the courses in which veterans were enrolled.
5. Pursuant to Instruction No. 6, payment of vouchers submitted by a school engaged in the education and training of Public Law 346 veterans was effected by the Finance Division of the Veterans Administration Regional Offices based on catalogs or other literature furnished by the school reflecting its charges to non-veteran students which determined its customary rate. Since this required the finance personnel of the Regional Office to review the literature of the school each time vouchers were submitted, there was considerable difficulty in verifying the correctness of the invoices from the miscellaneous tuition rate data which was provided by the schools concerning their customary tuition rates. In order to effect simplification and uniformity of the procedure for ascertainment of customary rates, the Branch Office of Area No. 1, in Boston, issued a circular letter to *106 all the Veterans Administration regional offices under its jurisdiction under date of February 11, 1948, reading as follows:
VETEKANS ADMINISTRATION
Branch Office #1
55 Tremont Street, Boston 8, Mass.
February 11, 1948
In reply refer to: B07C
TO: Chiefs, Vocational Rehabilitation and Education Divisions
All VA Regional Offices and Centers
Branch Office #1 Area
ATTN: Chiefs, Training Facilities Sections
SUBJ: Review of Charges
1. Your attention is invited to Training Facilities Manual M7-5, paragraph 74.1, which states that “the Training Facilities Section is responsible for determining whether the charges made by institutions to the VA for education and training of veterans are in accord with the provisions of this manual.” Inclusion of this paragraph in the Training Facilities Manual places an additional responsibility upon the Training Facilities Sec-ton. The Chiefs of Training Facilities should check with their Contract and Institutional Units to be certain that a plan has been established to meet the requirements of paragraph 74.1.
2. In connection with this, the Branch Office recommends that a contract officer confer with each institution offering training under Public Law 346 and that a listing be made from current publications and other official documents of the institution, showing payments which are authorized under Public Law 346 in accordance with Manual M7-5. After this list is compiled, the regional office should prepare a letter in triplicate to the institution setting forth this list of conditions governing the training offered. It is believed that the letter should specifically contain:
a. Name of course or courses offered.
b. Whether institution operates on a credit-hour or clock-hour basis.
c. Length of course; time and total credits required for completion.
d. All charges and fees payable under Public Law 346.
e. Amount of books, supplies, and equipment required.
f. The calendar for the school year.
*107 g. A limitation of $500 if the tuition charges are based on other than customary tuition.
h. The refund policy agreed upon between the VA and the institution.
i. A statement as to when vouchers will be submitted.
j. Any other pertinent information having a bearing upon the relationships between the institution and the Veterans Administration not specifically covered by Manual M7-5.
3. When the letter, properly addressed to the school, has been prepared in triplicate, it should be signed by the Chief of the VE&E Division and presented to the school with a typed endorsement of approval below the Chief’s signature. If the school agrees that the charges set forth are those for which it will voucher and agrees with the other material presented, the appropriate official of the institution will endorse the letter on behalf of the institution. This endorsement should indicate approval as to the material presented and contain a certification that charges are the customary charges of the institution. If tuition charges are based on other than customary tuition said certification as to charges would be to all charges except tuition. The three signed copies of the letter would then be distributed as follows: The original to the school, one carbon to Finance, and one carbon for the Training Facilities Section.
4. After receipt of a copy of the letter in Finance no payments should be made to the institution under Public Law 346 except those specifically set forth in the letter. The letters should be amended or superseded when new facts governing the training are known and such letters should be reviewed each year. This procedure would be for prospective application. The plan proposed above is intended to supplement the provision of paragraph 74.1 and should not in any way reduce the responsibilities in that paragraph for Training Facilities personnel conferring with Finance personnel and with training officers for the purpose of reviewing the “validity of the charges” and of “ascertaining that services being rendered to the trainee are those for which charges are being made.”
5. It is requested that your office indicate whether you intend to carry out the responsibilities set forth in paragraph 74.1 by the method outlined by Branch Office in this letter, or if you plan another method, please indicate what method is to be used.
*108 6. Sufficient copies of this letter are attached so that each contract officer in Regional Offices and YA Offices may have one.
(S) Arthur M. Cochran
Arthur M. Cochran
Chief, Training Facilities Division

YR&E Service.

cc Director, T/F Service, Central Office
Director, Finance Service, Branch Office #1
Paragraph 74.1 of Manual M7-5 (added October 10,1947) mentioned in the first paragraph of the above letter, reads as follows:
74.1 REVIEW OF CHARGES
a. The Training Facilities Section is responsible for determining whether the charges made by institutions to the YA for the education and training of veterans are in accord with the provisions of this manual (see par. 108).
b. In order to determine that charges by institutions where contracts are not required are being made to the YA inaccordance with YA regulations, the basis for charges to the VA by each approved institution in which Public Law 346 veterans are enrolled and with which a contract has not been executed will be examined from time to time by personnel of the Training Facilities Section. Such personnel will, insofar as possible, as part of their prescribed duties, visit the institutions involved to determine that charges being made for the education and training of veterans are in accordance with YA regulations. From time to time Training Facilities Section personnel will confer with finance personnel in the regional office concerning the validity of the charges being made by such institutions.
c. Close liaison will be maintained between the personnel of the Training- Facilities Section and the training officer or officers assigned to the institution for the purpose of ascertaining that services being rendered to the trainee are those for which charges are being made.
6. In accordance with the recommendations made in the circular letter of February 11, 1948, the Boston Regional Office, under date of May 14, 1948, sent a letter to plaintiff tabulating the customary rates of the Feener Technical Schools, Inc., and the Feener Business Schools, Inc., (the latter school is not involved in this suit). A copy of the *109 letter was returned to tlie Regional Office with, a certification by M. Feener, an official of the plaintiff school, that the charges listed in the letter were the customary approved charges. The letter reads as follows:
VETERANS ADMINISTRATION
Regional Office No. 1
17 Court Street, Boston 8, Massachusetts
May 14, 1948
Your file reference:
In reply refer to: 1R7CC
Feener Business Schools, Inc. &
Feener Technical Schools, Inc.
216 Tremont Street, Boston, Massachusetts Gentlemen:
In accordance with Veterans Administration Manual M7-5, Page 42, Paragraph 74.1, the Training Facilities Section is responsible for the examination of charges vouchered for training P. L. 846 trainees by approved institutions for which no contract has been negotiated.
To accomplish a mutual understanding and comply with the requirements of the regulation, as stated above, a tabulation of all authorized charges, courses and other pertinent information for the training of veterans under P. L. 346 at your institution is given below. The tabulation as given was extracted from information contained in your regular catalogues and as given by school officials.
COURSES
Machine Drafting (day)-1 year — 52 weeks
Machine Drafting (eve)-2 years — 104 weeks
Machine Drafting & Plastic Mold 1 year — 52 weeks Design (day).
Plastic Mold Design (eve)-2 years — 104 weeks
Piping Drafting (day)-1 year — 52 weeks
Shorthand, English & Transcription 150 hours — 6 weeks (day).
Shorthand, English & Transcription 150 hours — 12 weeks (eve).
Typewriting (day)_ 150 hours — 0 weeks
(eve)_ 150 hours — 12 weeks
Accounting (day)_2 years — 48 weeks each
Accounting (eve)_ 4 years — 48 weeks each
SCHOOL CALENDAR
School in session continuously throughout the year. Legal holidays observed in all courses. Accounting school only observes one week recess at Christmas, Thanksgiving (Wed. noon to following Monday A. M.) and one-half week at Easter.
*110 Technical School has two day divisions:
TECHNICAL
Morning Division:
Monday through Thursday — 8 A. M. to 1:30 P. M.
Friday — 8 A. M. to 12 Noon.
26 Clock hours per week
Afternoon Division:
Monday, Wednesday & Friday — 1:30 P. M. to 6:30 P. M.
Tuesday & Thursday — 1: 30 P. M. to 7: 00 P. M.
26 clock hours per week
Evening School:
Monday, Wednesday & Friday — 6: 30 P. M. to 10: 00 P. M.
Thursday — 7: 00 P. M. to 9: 30 P. M.
13 clock hours per week
BUSINESS SCHOOL
Day School:
Monday through Friday — 8 A. M. to 1 P. M.
25 clock hours per week
Evening School:
Monday, Wednesday & Thursday — 6: 00 P. M. to 10:10 P. M.
12 clock hours per week
CHARGES
*Maehine Drafting (day & eve) $715.00 for complete course Tuition.
^Machine Drafting & Plastic Mold $715.00 for complete course Design (day & eve) Tuition.
Piping Drafting (day) Tuition_$715.00 for complete course
Books, Supplies, Etc. for each $40.00 to $48.73 course.
Shorthand, English & Transcrip- $75.00 for complete course tion (day & eve).
Typewriting (day & eve)_$88.20 for complete course
Accounting (day) Tuition_$429.00 per year
Accounting (eve) Tuition_ $214.00 per year
Books, Supplies, Etc. (acctg)_$60 to $65.00 per year
Tuition prorated in accordance with veteran’s attendance. Vouchers submitted monthly in arrears.
♦All students entered in these courses on or before May 1, 1947, are vouehered at unit price 'which includes tuition and all other inclusive charges.
BUSINESS SCHOOL — SECRETARIAL DIVISION
Day School:
Monday through Friday — 9: 00 a. m. to 2:30 p. m.
26 clock hours per week
Evening School:
Monday, Tuesday, Wednesday and Thursday — 6: 00 to 9:00 p. m.
12 clock hours per week
*111 It is understood and agreed by the Veterans Administration that these are the authorized charges for the courses as described and will remain in effect unless changed by additional action by the Board of Collegiate Authority.
If the charges and information as given meets with your approval and concurrence, kindly so indicate in the statement at the end of this letter. Please retain original for your files and return first and second copies to this office.
Very truly yours.
/s/ John L. Pickett
John L. Pickett

Chiefs Vocational Rehabilitation and, Education Division.

It is agreed that the charges as given are the customary approved charges for the courses described, and it is further agreed that the charges and information meet with the approval of this institution but will in no way affect any further or additional approval for training Public Law 346 veterans granted by the Board of Collegiate Authority.
/s/ M. Feener
Signature, School Official.
7. The letter of May 14-, 1948, was not considered by the Veterans Administration to be a contract, but was intended to serve the purpose of advising the Finance Department of the Regional Office of the school’s customary rates which it was entitled to be paid under Public Law 346. The tuition rates set forth in the letter were the customary rates which the plaintiff school, with the approval of the Massachusetts Board of Collegiate Authority by which it was licensed, charged its non-veteran students. As was indicated by the certification, the plaintiff’s officers knew that the charges could be changed at any time with the approval of the State Board of Collegiate Authority. The letter did not conform with procedural requirements of a Veterans Administration contract which were set out in Veterans Administration Manual M 7-5. Paragraphs 99 and 100 of the Manual require the use of a formal contract, VA Form 1903, a sample of which is printed in the Manual. It requires the contract to be for a specified time, fiscal year, school year, or such other period as may be mutually acceptable. Paragraph 110 of the *112 Manual requires that 6 copies of a contract be made. The letter of May 14 was not on the regular contract form; it did not include any specified time for its operation; only 8 copies were made and no copy was filed with the General Accounting Office as is required with formal contracts.
8. Change 4 to Veterans Administration Manual M7-5 was promulgated as a regulation on May 17,1948,13 F. It. 2695, requiring that contracts be negotiated with profit schools on a fair and reasonable basis beginning July 1,1948, for training of Public Law 346 veterans, as well as Public Law 16 veterans, in the case of certain schools which came into existence after June 22, 1944, or which had increased their charges for tuition in excess of 25%. The pertinent provisions of Change 4 read as follows:
§ 36.287 Determination of fair and reasonable compensation. The determination of fair and reasonable compensation by the manager, as in the case of courses of less than 30 weeks, or courses of 30 weeks or more in institutions other than nonprofit, will require the submission by the educational or training institution of detailed, certified financial statements showing the most recent actual cost experience of the institution for the specific courses involved including cost data on the items of expense which will be used for the determination of fair and reasonable compensation, the basis on which teaching salaries and other expenses have been allocated to the courses involved, and the number of students enrolled and the number of clock hours or credit hours during the period covered by the cost data. In the case of new courses for which no actual cost experience is available, estimated costs may be submitted.
$ $ $ $ ‡
(b) For institutions other than non-profit for either courses of less than SO weeks or courses of 30 weeks or more. Fair and reasonable compensation for schools operated for profit will not exceed the actual or estimated costs to the institution for providing the instruction, plus an allowance for profit as indicated below. In determining the fair and reasonable compensation all expenses, except expenses for sales commissions and promotional plans, which are reasonable and necessary for the operation of the courses involved will be included in the cost statement and such expenses will be grouped into the general categories set forth below within the limits designated.
*113 (1) Actual cost of teaching and related personnel at reasonable salaries. Teaching and related personnel will include personnel essential to the teaching function such as laboratory supply room attendants and clerical personnel assisting teachers in the preparation of instructional material and records. The salaries of personnel serving both in administrative and teaching functions will be prorated accordingly. The cost shown for teaching personnel will be supported by a schedule listing the name, title, annual salary rate, and will show whether employment is part or full time for each person included in such cost.
(2) Consumable instructional supplies.
(3) Depreciation on building and equipment actually used for instruction of students at rates allowed by the Bureau of Internal Revenue for income tax purposes.
(41 Reasonable rent.
(5) Cost of heat, light, power, water, janitor service, and building maintenance.
(6) Taxes and insurance, exclusive of income taxes.
(7) Actual administrative expenses which are considered reasonable and necessary in the operation of the school and are properly allocable to the courses under review. Such expenses may include salaries of administrative and clerical personnel representing reasonable compensation for services actually performed and the cost of such items as postage, telephone and telegraph, travel, interest, legal and accounting fees for actual services (not retainers), stationery and office supplies, and such other similar expenses as are reasonable and necessary for the operation of the school: Provided, That in no case will there be included in the fair and reasonable cost determination a base salary in excess of the rate of $10,000 per annum for an individual who has a proprietary or bonus interest in the institution. _ The administrative cost must be itemized and the salary items must be supported by a statement showing for each person the name, title, annual salary, percentage of time devoted to administration and the amount of salary allocated to the cost of the courses under review. All cases where requested administrative costs exceed 15% of sub-paragraphs (1), (2), (5), and (6) of this paragraph shall be forwarded to Assistant Administrator for Vocational Rehabilitation and Education, Central Office for review and approval.
(8) Advertising expense calculated in accordance with the procedure set forth below and not to exceed the limitations prescribed herein.
*114 (i) Determination of amount allowable for advertising expense. Well-established profit institutions may be permitted to include actual advertising expenses for the period covered by the cost data in determining fair and reasonable costs where the percentage of actual advertising expense in relation to gross income from resident instruction for the period covered by the cost data does not exceed the average percentage of gross income expended by the institution for advertising over the five-year period immediately preceding June 22, 1944, as evidenced by a certified statement of the institution as to advertising expenses and gross income from resident instruction for the periods covered, and where the percentage of advertising expense in relation to gross revenue from tuition does not exceed the average percentage of advertising costs for other comparable well-established schools in the area. Where the institution has not been established for a period of five years prior to June 22, 1944, and therefore does not have a fair standard of experience with relation to advertising costs prior to the enactment of Public Law 346, 78th Congress, as amended, the institution may be permitted to include advertising expense actually incurred during the period covered by the cost review in an amount not to exceed the average percent of gross income from resident instruction which other well-established comparable schools in the area have expended for advertising for the five-year period immediately prior to June 22,1944. If there are no other comparable schools in the area and if the institution does not have a five-year experience prior to June 22, 1944, the schools may be authorized to include actual advertising costs at a rate shown by their experience but not in an amount to exceed 8 percent of the total gross income from resident instruction for the period covered by the cost review without prior approval of Central Office. Where there are no other comparable well-established schools in the area and the actual advertising experience of the institution exceed 8 percent of gross income from resident instruction, more than 8 percent may not be included in the fair and reasonable cost determination unless all facts are submitted to the Assistant Administrator for Vocational Rehabilitation and Education and approval is granted for the inclusion of advertising costs in excess of 8 percent. In no event will a newly established school, without actual cost experience for advertising expense, be permitted to include in a fair and reasonable cost state *115 ment, advertising expense in excess of 8 percent of gross income from tuition for resident instruction.
(ii) Definition. The term “advertising expense” as used herein includes the expenses incurred in the operation of an advertising department within the contractor’s organization, as well as expenses incurred in the use of advertising media, such as newspapers, magazines, radios, brochures, pamphlets, bulletins, and catalogs. Promotional activities involving gifts, scholarships, contests, prizes, and sales commissions are not permitted to be included as allowable advertising expenses.
(9) Profit not to exceed 10% of the amount customarily charged to non-veteran students for the course. For example, if the customary charge for the course is $200 and the amounts listed in subparagraphs (1) through (8), inclusive, of this paragraph, divided by the total number of students equals $170, there will be added to the $170 a profit allowance of $20 (10% of $200) making a total maximum rate of $190, which can be determined to be fair and reasonable. If no non-veteran students are enrolled and there is therefore no real customary charge actually being paid by non-veteran students, the profit allowance will be determined as one-ninth (%th) of the total allowable costs included in subparagraphs (1) through (8), inclusive, of this paragraph.
(10) Expenses for sales commissions and promotional plans will not be allowed.
(c) When the manager ha.s completed his analysis of the cost data. When the manager has completed his analysis of the cost data, he will determine on the basis of the total number of all students trained and cost of the items listed herein, after reflecting known changes in costs, whether the customary charges of the educational or training institution are fair and reasonable. In making this determination the manager will give consideration to the fact that it is not fair and reasonable for the Veterans Administration to pay a charge based on the full cost of operating an educational institution under abnormal situations, such as periods when enrollments in the institution are far below the normal capacity and expectancy of the institution, or where operating costs are greatly in excess of normal operating costs for other comparable institutions in the same general locality. Contracts, when required, will be negotiated to provide payment not to exceed the amounts determined by the manager to be fair and reasonable as provided herein.
*116 ■ (d) Books, supplies and equipment. Books, supplies ana equipment required to be owned personally by other students pursuing the same course will be furnished by the institution to veterans, and the institution will be compensated therefor on the basis of customary charges in addition to “fair and reasonable compensation” as defined above.
§ 36.288 Determination when a contract is required. Part VIII, Veterans Regulations 1 (a), as amended (Chapter 12, 38 U. S. C.), trainees. It will be necessary for a contract to be negotiated by the Veterans Administration before payments for tuition, fees, books, supplies, equipment and other necessary expenses are made to the institution for the training of Part VIII trainees under the following circumstances:
H» sjí ^
(b) Other than nonprofit institutions. (Courses of 30 weeks or more and courses of less than 30 weeks) :
(1) Contracts will be required when the customary charges exceed the rate of $500 for a full time course for an ordinary school year. In the negotiation of such a contract, it will be necessary for the school to submit cost data. Agreed contract rates will not exceed rates determined by the Veterans Administration to be fair and reasonable in accordance with the provisions of §36.287.
(2) Effective July 1, 1948, contracts will be required when the customary charges do not exceed the rate of $500 for a full time course for an ordinary school year where a majority of the enrollment of the institution consists of veterans in training under Public Laws 16 and 346, as amended, and where one of the following conditions prevails:
The institution has been established subsequent to June 22, 1944.
The institution, although established prior to June 22, 1944, has increased its charges to all students subsequent to that date to an amount which, in the judgment of the manager, appears to be an unreasonable amount for the services rendered. In general, an increase of less than 25% will not be considered unreasonable. However, if, in the judgment of the manager, an increase of less than 25% in the case of any institution is considered to be unreasonable, the manager may submit a full report of the facts to the Assistant Administrator for Vocational Rehabilitation and Education *117 through, the appropriate branch office and request a ruling as to whether or not a cost determination should be made.
In the negotiation of contracts as required in this subparagraph, it will be necessary for the school to submit cost data. Agreed contract rates will not exceed rates determined by the Veterans’ Administration to be fair and reasonable in accordance with the provisions of § 36.287.
(3) Contracts will not be required when the customary charges of an institution do not exceed the rate of $500 for a full time course for an ordinary school year provided any one of the following conditions prevails:
(i) When the customary charges of an institution established prior to June 22, 1944, do not exceed the rate of $500 for a full time course for an ordinary school year and the institution has not increased its charges subsequent to June 22, 1944, to an amount which, in the judgment of the manager, appears to be unreasonable for the services rendered.
(ii) Where the majority of the enrollment of the institution consists of students not in training under Public Laws 16 and 346 as amended.
(iii) Where an institution which was established prior to June 22,1944 and has been in continuous operation since that date and has not increased its charges to students, veterans and non-veterans alike, to an amount in excess of the charges customarily made by the institution for the same or similar courses prior to June 22, 1944.
(4) Payments of customary charges will be made to institutions within the provisions of subparagraphs (3) (i), (ii), and (iii) of this paragraph without requirement of either a cost determination or a contract. In all such cases, the Training Facilities Section will notify the Finance Officer in writing of the customary charges that are authorized to be paid without a contract.
(5) Each institution affected will be notified in writing of these provisions not less than 30 days prior to the date a contract is required. In any case in which a contract is required under Veterans’ Administration regulations for the education and training of veterans, no payments whatsoever will be made to an institution until a written agreement or contract between the Veterans’ Administration and the institution has been completed.
*118 9. Under date of June 4, 1948, the Veterans Administration Boston Regional Office sent the following letter to the plaintiff:
VETERANS ADMINISTRATION
Boston Regional Office
17 Court Street, Boston 8, Massachusetts
June 4, 1948
Feener Business Schools, Inc. 1R7CC
Union Savings Bank Building
216 Tremont Street
Boston 16, Massachusetts
(Attn. Carleton L. Feener, Pres.)
Gentlemen:
Enclosed is an advanced copy of Change 4 of Veterans Administration Manual M7-5. Your attention is directed particularly to paragraph 106, Section b. This Section deals in part with the criteria under which contracts will be required even though the charges be less than the rate of $500.00 for a full-time course for an ordinary school year.
In order to determine whether or not a contract is necessary for all or some of the courses for which you are approved under Public Law 346, it is essential that you submit certain data to the Boston Regional Office of the Veterans Administration on the attached form. If no charge existed for certain items on this form prior to June 22,1944, such as Registration fee or any other fee, kindly write in the word “none”. If there is not sufficient space for all the courses for which you are approved, additional sheets may be added.
From this information the Veterans Administration will determine whether or not a contract is necessary with your school in order to make payments after July 1, 1948. This information should be forwarded promptly.
Very truly yours,
William: J. Blake,
Manager.
Inch
Enclosed with this letter was a form which, after receipt, was filled out by plaintiff’s president and returned to the Veterans Administration. The form was completed as follows:
Manager
Veterans Administration
17 Court Street
Boston 8, Massachusetts
(Attention: Chief, Training Facilities Section)
*119 Dear Sir:
We herewith submit to you a schedule of Charges prior to and subsequent to June 22, 1944 together with the current enrollment of the institution and the date the institution was established.
ENROLLMENT AS OE MAY 15, 1948

SCHEDULE OE CHARGES

I certify as an administrative official of Feener Technical Schools, Inc. which was established on May 3rd, 1943 that the above information is correct.
/s/ Carleton L. Feener, President.
(Signature and Title)
10. Upon receipt of the above information showing that plaintiff’s charges for the courses in drafting and plastics had been increased since 1944 from $195 for tuition plus $20 for books and supplies for a 225-hour course to $715 for tuition plus $48.73 for books and supplies for a 1352-hour course, the Veterans Administration made an official determination that the charges of the school had been increased “to an unreasonable amount for the service rendered”, and that the plaintiff school accordingly had no customary charge and was subject to the provisions of Change 4 requiring the school to enter into a written contract at a fair and reasonable tuition charge based on cost data.
*120 The evidence establishes that prior to June 22, 1944, the plaintiff school offered elementary 225-hour courses in drafting and plastics at a charge of $220, including supplies. Subsequent to June 22, 1944, and during 1946 and 1947, the plaintiff school introduced the long courses which are involved in the instant action. They dealt with the same basic subject as the short courses but offered opportunities for advanced study. Each course given in the day school was 1,352 hours long, or 26 hours per week for 52 weeks for which the school charged $763.73, including supplies. The courses in the night school were scheduled at half the length and half the tuition of the day school courses. The long courses were introduced at a time when large numbers of veterans, recently released from the armed forces, were taking advantage of the educational opportunities of the Servicemen’s Readjustment Act, and were particularly designed for veterans whose tuition would be paid by the Veterans Administration. As of May 15,1948, of the 216 students enrolled in the plaintiff school, 214 were veterans and only two nonveterans. All the veterans were enrolled in the long courses. The charge for the long courses was fixed at the highest amount which the Veterans Administration was authorized to pay for tuition and supplies under Public Law 346, that is, $500 for an ordinary school year of 34 weeks.
Plaintiff introduced no evidence which shows that the tuition increase was fair and reasonable for the services rendered.
11. Under date of July 1,1948, the Boston Regional Office wrote the following letter to plaintiff:
Feener Technical Schools, Inc.
667 Boylston Street
Boston, Massachusetts.
Gentlemen:
In accordance with your answer to our recent inquiry concerning tuition data, etc., it will be necessary for your school to file cost data before a formal contract for P. L. 346 veterans can be negotiated.
Enclosed find Memorandum Agreement dated July 1, 1948, which will permit the continuance of Public Law 346 veterans in training until such time as a formal contract can be negotiated.
*121 Please sign Memorandum Agreement as indicated and return as soon as possible to:
Training Facilities Section, Em. 1217
Veterans Administration
150 Causeway Street
Boston, Massachusetts
(Attention: Mr. Frank E. Hannon) Very truly yours,
(S) Joseph Gargan
Joseph Gaegan,

Chief, Regional Training Facilities for Vocational Rehabilitation and Education Division.

There was enclosed a memorandum agreement which, on July 26,1948, was signed by Carleton L. Feener as president of the Feener Technical Schools, Inc. The agreement read:
VETERANS ADMINISTRATION MEMORANDUM AGREEMENT
Boston Massachusetts
(City) (State)
It is herein agreed between the Veterans Administration and the
_Feener Technical Schools, Inc._
(Name of Institution) ] j
that the above institution will accept for instruction Eersons entitled to education or training under Public iaw 346, 78th Congress, as amended, whose enrollment is approved by the Veterans Administration in any course that this institution offers for fees or charges to be determined in accordance with rules, regulations, and policies of the Veterans Administration until formal contract is negotiated.
It is further agreed that this Institution will be entitled to receive payment for said services from the date of this agreement at the rates mutually agreed upon in the contract to be executed.
It is further agreed that regular reports covering the attendance, deportment, and progress of students placed in training by the Veterans Administration, and such additional reports as may be deemed necessary, shall be furnished by the Institution at such intervals as may be specified by the Veterans Administration.
It is further agreed that this agreement will remain in effect until the contract above is consummated.
*122 APPROVED AND ACCEPTED:
Feener Technical Schools, Inc.
(Name of Institution.)
/s/ Carleton L. Feener
(Name of Signer)
/s/ President
(Signer’s Official Title)
APPROVED AND ACCEPTED:
/s/ Howard S. Kiley
Chief, Vocational Rehabilitation and Education Division
Boston Massachusetts
(City) (State)
July 1,1948
(Date)
In the letter returning the signed memorandum agreement to the Veterans Administration, plaintiff requested that an escape clause be added to it as follows:
In the event that it is determined by the Supreme Court that the new regulations under change 4 and Manual MI-5, paragraph 106 b. (2) (a) do not apply to the Feener Technical Schools, Inc., or that the new regulations are ultimately held to be invalid, the school will be paid its full present rates covering the entire period since July 1,1948, and thereafter.
The letter concluded:
In the event that the Regional Office decrees that we have no legal right to an escape clause, we would appreciate it for the record if you will so advise us, and you are hereby given the authority to detach the supplement attached to the memorandum agreement. However, we are preparing cost data which will be in your hands at the earliest possible moment.
On August 6,1948, the Regional Office wrote plaintiff that it was not necessary to append an escape clause to the memorandum agreement since the Veterans Administration had ruled that the formal contract to be signed under Change 4 could include a clause providing that if the regulation under which the rates were determined was declared invalid by the courts, the rates payable under the contract would be those in effect as of July 1,1948. In answer to this letter plaintiff, on August 9, 1948, wrote to the Regional Office, “This is to certify that the Memorandum Agreement signed by the *123 Feener Technical Schools, Inc., and the president, Carleton L. Feener, may be processed immediately without attaching a Supplementary Clause as requested.”
The purpose of the memorandum agreement was to enable the Veterans Administration to pay the school retroactively to July 1, 1948, the rates which were subsequently embodied in the formal contract in view of the following provision of Change 4, Sec. 36.288 (5) :
In any case in which a contract is required under Veterans’ Administration regulations for the education and training of veterans, no payments whatsoever will be made to an institution until a written agreement or contract between the Veterans’ Administration and the institution has been completed.
Such memorandum agreements were specifically provided for in Section 108 (b) of Manual M7-5, as follows:
b Memorandum agreements. If a contract is required under existing regulations and it is not possible to complete a formal contract with an approved institution prior to the enrollment therein of eligible veterans, a memorandum agreement similar to figure 16 may be made pending completion of the formal contract. Nates of payment need not be stated in the memorandum agreement, though provision may be included which specifies that the rates as finally adopted will be determined in accordance with rules, regulations, and policies of the VA and will be effective from the beginning date of training as set forth in the memorandum agreement.
12. In compliance with the requirements of the regulation, Change 4, plaintiff, under date of August 13,1948, submitted on the official Veterans Administration forms, cost data showing the cost of operation of both the day and night schools from May 1,1947, to April 30,1948, as a basis for the determination of fair and reasonable tuition rates to be embodied in a formal contract beginning July 1, 1948.
For the day school the summary of costs and tuition charges submitted by plaintiff is as follows:

*124

At a conference which, was held with Mr. Carleton L. Feener, the plaintiff’s president, and his accountant at the Regional Office, the allowable administrative expense (Item 7) was raised from $23,616.41 to $29,486.13 and the corresponding unit rate from $107.83 to $134.63. The allowable advertising expense (Item 8) was decreased from $20,981.09 to $12,603.80 and the corresponding unit rate from $95.80 to $57.55 in order to comply with the regulation’s limit of 8% of gross income since the school did not have a five-year standard of experience with relation to advertising prior to June 22, 1944. The sub-total (Line 9) was accordingly changed from $118,899.50 to $116,386.02 and the corresponding unit rate from $542.91 to $531.36. The cost per student (Line 12) was changed from $542.91 to $531.36, and the Veterans Administration determination of a fair and reasonable tuition rate was changed from $614.41 to $602.86.
For the evening school the summary of costs and tuition charges submitted by plaintiff is as follows:

*125

At the same conference mentioned above, the allowable administrative expense (Item 7) was raised from $1,587.87 to $1,957.66, and the corresponding unit rate from $46.70 to $57.57. The allowable advertising expense (Item 8) was decreased from $1,410.65 to $834.40 to comply with the 8% limitation of gross income and the corresponding unit rate decreased from $41.49 to $24.54. The subtotal became $8,471.17 instead of $8,677.63 and its corresponding unit cost $249.12 instead of $255.20. The fair and reasonable tuition rate, as determined by the Veterans Administration, accordingly became $284.87 instead of $290.95.[1]
13. On the basis of the cost data submitted by the plaintiff the Veterans Administration prepared and delivered to plaintiff a proposed contract for the period July 1, 1948, to December 31,1948, at the following tuition rates:

Sours of attendance:

Day School — Twenty-six hours per week.
Evening School — Thirteen hours per week.
School Year: Fifty-two weeks

*126
Tuition:

Day School — $602.86 per student per year.
Evening School — $284.87 per student per year.
The proposed contract also contained the following escape clause:
The rates set forth in Schedule 1 of this contract have been determined in accordance with Veterans’ Administration Regulations prescribed in Par. 108b (2) of V. A. Manual M7-5. Should it be finally determined judicially, in the litigation now pending between Metropolitan Training Center, Inc. vs. Carl R. Gray, Jr., et. ah, in the District Court of the United States for the District of Columbia, or in any similar suit filed during the term of this contract, that the regulation in question is invalid, the rates payable under this contract shall be those in effect as to all students as of July 1,1948. The customary rates in effect July 1,1948, were:
Day School-$715.00 per year
Evening School-$357.50 per year
The proposed contract was delivered to plaintiff on November 10, 1948. On the same day plaintiff’s president addressed a letter to Carl R. Gray, Jr., Administrator of Veterans’ Affairs, in which he claimed to be entitled to payment of the rate embodied in a contract with the Veterans Administration dated May 14, 1948. “Since this contract,” he wrote, “was entered into May 14,1948, which is of recent date, and no attempt by letter or otherwise has been made to challenge said contract, the Feener Technical Schools, Inc., being a Massachusetts Corporation with its rights and privileges thereof, hereby demand without reservation that the Veterans Administration be forced and compelled to recognize the validity of this contract and to carry out its entire intent and purpose.” He then suggested the inclusion in the forma] contract of an escape clause which would permit the Feener Schools to test the validity of the question of regulation Change 4, as well as the question of whether the school came within the purview of the Regulation and that “if the court subsequently rendered a decision in favor of the Feener Technical Schools, Inc., the Feener Technical Schools, Inc., will be released from any contracts or agreements entered into in connection with the so-called Change 4 Regulation, and *127 that the customary tuitions of said institution will be retroactive to July 1, 1948, and the institution will revert to its former status.”
The Administrator of Veterans’ Affairs replied to this letter by letter dated November 17, 1948, in which is was pointed out that
* * * in accordance with VA Manual M7-5, page 42, paragraph 74.1, the Training Facilities Section is responsible for the examination of the charges vouchered for training Public Law 346 trainees by approved institutions for which no contract has been negotiated. * * *
After quoting paragraph 74.1 of the Manual and noting that on May 14,1948, a contract with the Feener Schools was not required, the letter went on to say:
In view of these facts, it is considered that the letter dated May 14,1948, consisted merely of an agreement to the effect that under the then existing regulations a contract was not required and that the charges set forth in the letter were the approved customary charges of the institution which were then payable by the Veterans’ Administration under the existing regulations. This agreement was voided by the regulation promulgated by the Veterans’ Administration to become effective July 1, 1948, as set forth in Part 36, Section 36.288, Veterans’ Regulation, published in Volume 13, No. 98, of the Federal Register dated May 19, 1948. Therefore, your request for continuation of payment in accordance with the letter dated May 14,1948, must be denied.
Under previous instructions to all Veterans Administration Branch and Regional Offices, any school presently operating which is affected by the regulation which became effective July 1, 1948, with respect to courses of 30 weeks or more, is permitted, if it so desires, to include in a contract hereafter executed pursuant to the said regulation the following clause: “The rates set forth in Article (blank) of this contract have been determined in accordance with Veterans Administration regulation prescribed in paragraph 106b (2) of VA Manual M7-5. Should it be finally determined judicially in the litigation now pending between Metropolitan Training Center, Inc. vs. Carl R. Gray, Jr., et ah, in the District Court of the United States for the District of Columbia or in any similar suit filed during the term of this contract that the regulation in question is invalid, the rates payable under this contract shall be those in effect as to all *128 students as of July 1, 1948.” The Veterans Administration, if you so request, will include in your contract the aforementioned escape clause and in addition will permit you to include in the contract an additional clause to read as follows: “This agreement shall be without prejudice to the Feener Technical Schools, Inc., to receive its rates in full on July 1,1948, from said date, in the event it be finally judicially determined that the regulation set forth in paragraph 106b (2) of VA Manual M7-5 is not applicable to the Feener Technical Schools, Inc.” It is believed that these two escape clauses will provide adequate protection for your institution in the event that it is later determined judicially that the regulations are invalid or that the regulations do not apply to your institution.
A copy of this letter is being sent to the Deputy Administrator, Veterans Administration Branch Office No. 1, Boston, Massachusetts, for information. Immediately upon completion of a contract in accordance with the provisions of existing Veterans Administration regulations, payment will be made to your institution for services rendered to veterans subsequent to July 1, 1948.
By letter dated December 8, 1948, the Administrator agreed to expand the escape clause to include the right of the school to a judicial determination of the question of whether the letter of May 14, 1948, constituted a contract.
Notwithstanding the offer of the Veterans Administration to include in the proposed contract a comprehensive escape clause which would protect any rights plaintiff might have in the claimed customary tuition, plaintiff still refused to sign the contract. Plaintiff submitted a new cost data statement for the period November 1, 1947, to October 31, 1948, as the basis for the determination of a new rate for the proposed contract term beginning July 1,1948. This cost statement was returned to plaintiff as unacceptable since it overlapped a large portion of the period July 1 to December 31, 1948, for which the contract was to run. The requirement of Change 4 for a financial statement “showing the most recent actual cost experience of the institution” has always been applied by the Veterans Administration as meaning the most recent period prior to the commencement of the proposed contract term.
*129 Plaintiff failed to produce evidence establishing that the rate of $602.86 fixed by the Veterans Administration for the day school courses was not fair and reasonable. Under all the circumstances of the case, fair and reasonable compensation for the night school courses is $301.43.
14. On August 24,1949, there was enacted Public Law 266, 81st Congress, 63 Stat. 631, 652, et seq., by which funds were appropriated for the Veterans Administration for the fiscal year 1950. It contained the following proviso :
That no part of this appropriation for education and training under Title II of the Servicemen’s Readjustment Act, as amended, shall be expended subsequent to the effective date of this Act for subsistence allowance or for tuition, fees or other charges * * *
(2) For any course of education or training for which the educational or training institution involved has no customary cost of tuition, fees, or other charges for such course has been determined. * * * If the Administration finds that any institution has no customary cost of tuition he shall forthwith fix and pay or cause to be paid a fair and reasonable rate of payment for tuition, fees, and other charges for the courses offered by such institution.
Pursuant to this statute the Veterans Administration again requested plaintiff, in October 1949, to submit cost data for the period beginning July 1, 1948, and ending June 30,1949, or some date subsequent to June 30,1949, but not later than August 23, 1949, so as not to overlap the proposed contract period, as a basis for the determination of a fair and reasonable tuition rate to be contained in a contract effective August 24, 1949. Plaintiff, however, failed to submit cost data as requested and the Veterans Administration Regional Office proceeded, in accordance with the direction of Public Law 266, to set a fair and reasonable-tuition rate effective August 24, 1949. The rate fixed was $567.84 per year for the day courses and $283.92 for the evening courses, equivalent to 42 cents per hour. Plaintiff was notified of the action taken by letter dated January 26, 1950, which stated in part,
* * * In the absence of any cost data subsequent to April 30, 1948, it has been necessary for this office to establish the fair and reasonable tuition rate for your *130 school based on cost data previously submitted for the period May 1,1947 to April 30,1948, and on the existing comparable rates paid to schools offering similar courses in this area. This has been done in accordance with instructions received from the Central Office of this Administration in Washington.
On receipt of this letter on January 27,1950, plaintiff again submitted the same cost data statement covering the period November 1, 1947, to October 31, 1948, which it had earlier submitted and which had been rejected as a basis for a contract to begin July 1, 1948. This statement was returned to plaintiff’s president as not acceptable and he was again reminded of the requirement that the cost data statement must cover the most recent period beginning at least by July 1,1948. Plaintiff did not submit the cost data requested and, on February 10, 1950, the manager of the Boston Regional Office wrote to plaintiff’s president as follows:
Further reference is made to my letter of January 26, 1950, in which you were advised that pursuant to the authority of Public Law 266, 81st Congress, the rates payable for tuition for eligible veterans enrolled in Feener Technical School, Inc., subsequent to August 23, 1949, is 42^ per instructional hour for both the day and evening courses.
This action is made necessary by the fact that notwithstanding the notifications which have been given to you as to the necessity of submitting cost data upon which to formulate fair and reasonable rates in accordance with said Public Law and the regulations, you failed and continued to fail to submit said necessary cost data.
In addition to the tuition rate set forth above your institution may be compensated for books, supplies, and equipment for otherwise eligible veterans at the following rates effective August 24, 1949: At prices charged other students, but not to exceed $46 per course, notwithstanding statement on Page 7 of your 1947-48 catalog.
If your institution so desires, a contract will be prepared setting forth the above rates of payment which contract may include a clause reserving for you the right to appeal this determination to the Veterans’ Tuition Appeals Board in the event that you are dissatisfied with the rate set forth above. In the event your institution does not desire to execute such a contract and indicates in writing to this office your notice of intent to appeal in *131 accordance with, the provisions of Veterans’ Administration Instruction 1, Public Law 266, and the General Rules of Practice Before the Veterans’ Tuition Appeals Board, VA Pamphlet 7-5, copies of both of which are attached, you may receive payment of the rate determined to be fair and reasonable upon the submittal of proper vouchers for otherwise eligible veterans.
On October 21,1950, plaintiff wrote the Veterans Administration relative to the status of the school under Public Law 610, 81st Congress, which had been enacted on July 13, 1950. By letter dated November 8, 1950, plaintiff was informed,
In order that a fair and reasonable determination may be made of the rate to be paid to your school for the training of veterans on and after July 13, 1950, you are requested to submit cost data to this office for the most recent period immediately prior to July 13, 1950. After analysis of such cost data, in accordance with regulations, the rate which has been determined to be fair and reasonable will be paid. This is in accordance with previously mentioned Instruction No. 1, Paragraph 3 a (1).
No further cost data was submitted by plaintiff. The plaintiff failed to submit cost data for the most recent period, as required by Change 4, as the basis for a determination of a fair and reasonable tuition rate for the period from August 24, 1949, to July 23, 1951, when the eligibility of the school to train veterans was withdrawn by the Massachusetts Board of Collegiate Authority, and failed to produce evidence establishing that the rate of $567.84 (42 cents per student hour) fixed by the Veterans Administration for the period subsequent to August 24, 1949, was not fair and reasonable.
15. On July 13, 1950, Public Law 610, 81st Congress, 64 Stat. 336, was enacted and provides in part:
* * * Any educational or training institution which is dissatisfied with a determination of a rate of payment for tuition fees, or other charges under the foregoing provisions of this paragraph, or with any other action of the Administrator under the amendments made by the Veterans’ Education and Training Amendments of 1950, shall be entitled, upon application therefor, to a review of such determination or action (including the deter- *132 ruination with respect to whether there is a customary cost of tuition) by a board to be known as the “Veterans’ Education Appeals Board” consisting of three members, appointed by the President. * * * Such Board shall be subject, in respect to hearings, appeals, and all other actions and qualifications to the provisions of sections 5 to 11, inclusive, of the Administrative Procedure Act, approved June 11, 1946, as amended. The decision of such Board with respect to all matters shall constitute the final administrative determination.
Pursuant to the above provision plaintiff, on December 8, 1950, filed an application with Veterans’ Education Appeals Board for a review of the Veterans Administration’s determination that the letter of May 14, 1948, did not result in the acquisition by applicant of a customary cost of tuition under Public Law 610 for the course of machine drafting and related courses and that 42 cents per hour ($567.84 and $283.92 per year, respectively, for the day and evening courses) was a fair and reasonable tuition rate for said courses.[2]
The issue ox the reasonableness of the tuition rate was withdrawn by the applicant during the hearing before the Board and all of the testimony with respect to the fairness and reasonableness of the rate was stricken from the record.
Pertinent excerpts from the decision of the Veterans Education Appeals Board, follow:
We shall address ourselves to the issue of first importance; namely, whether the document dated May 14, 1948 (applicant’s Exhibit No. 2), results in the acquition ox a customary cost of tuition for the courses under review, which the Administrator is required to pay from July 1,1948, to July 23,1951.
The applicant maintains that the document is a contract which entitled it to receive the rates of tuition stated therein from May 14, 1948, and that, upon the enactment of Public Law 610, July 13, 1950, these rates became its customary cost of tuition for the courses concerned. The contention upon which the applicant bases its claim to a customary cost has been judicially decided in an action instituted by the applicant in the United States District Court for the District of Columbia which sought, among other things, to enjoin the *133 enforcement of the provisions of Change 4 to the Veterans’ Administration Manual M7-5.8 The court, in denying preliminary injunctive relief, found as a fact that the document dated May 14, 1948, was not a contract.7 Had we been faced with deciding this question before judicial interpretation, we would have found, as we now find, with respect to the period of time beginning August 24,1949, that the written instrument dated May 14, 1948, is not a contract. That this is so is evident from the document itself. The letter indicates that its purpose is to comply with Veterans’ Administration regulations requiring examination of charges vouchered for training of veterans in instances where contraéis have not been negotiated. Additionally, the letter notes that the data contained therein was tabulated from the school’s catalog and from information given by the school officials. The letter provides for no time period and it appears that the signature of the applicant was requested in order to insure that the information so collected was correct.6 As we see it, the letter, in effect, was nothing more than a certification that the charges contained therein were the published charges of the school (VA Exhibit No. 6). The reference in the letter to the possibility of change in authorized rates by the local regulatory body, in our opinion, would not require the Veterans’ Administration to pay the rates, if changed, but merely limits the institution’s authorized rate structure. [Footnotes omitted. Italics as in original.]
$ •[* ^* *!*
On the basis of the above discussion, we conclude that the letter dated May 14,1948, is not a contract, nor can it, for purposes of establishing “customary cost”, by sequence of contracts, be considered as “any other agreement in writing on the basis of which tuition payments have been made from the Treasury of the United States,” under Public 610.
Having reached the conclusion that the above letter was not a contract (and the record indicates that the garties never executed any contracts providing for de-nitive rates of tuition), we turn now to the question of whether the applicant had a customary cost of tuition for the courses under review by reason of the provisions of Public 266 or 610,9 defining what might be described as historical customary cost. [Footnote omitted.]
# * jfc Jfc ‡
As shown by the facts in this case, the applicant cannot qualify its courses as customary cost of tuition *134 courses. Both the Machine Drafting and Mold Design course of 1,352 hours with a tuition rate of $715, and the Machine Drafting course of 52 weeks duration were first offered in 1947, and the course in Piping Drafting was first offered in 1948; all obviously after June 22, 1944. Nor can we accept the contention advanced by the applicant that the Machine Drafting and Mold Design course is the same as, but merely an extension of, the 225-hour course (now maintained as a separate course) offered prior to June 22, 1944, at a tuition rate of $195. Even if this contention were accepted, arguendo, the increase m total tuition would have brought the instant case within the definition in Public 266 under which the applicant would not be regarded as having a customary cost for the reason that its total tuition charge for the course was increased more than 25 percent even though the per-hour rate was, as asserted by the applicant, reduced from approximately $0.87 to $0,528. Similarly, under Section 2 (d) of Public 610, the applicant also would come within the category of institutions not to be regarded as having a customary cost for the courses under review. Therefore, the Administrator was under a statutory obligation on August 24, 1949, to fix and pay a rate of tuition determined on a fair and reasonable basis. The Administrator did so and determined that $0.42 per instruction-hour for each of the courses was fair and reasonable, which the applicant does not contest.
*****
THE BOARD FINDS THAT:
1. The written instrument dated May 14, 1948, is not a contract requiring the Administrator to pay the rates of tuition stated therein.
2. The applicant on August 24,1949, or any time thereafter, did not have a customary cost of tuition as defined in Public Laws 266 and 610, nor did it acquire a customary cost of tuition under said statutes by virtue of the written instrument dated May 14,1948, or otherwise.
3. The applicant is entitled to a tuition rate fixed on a fair and reasonable basis for the period August 24, 1949, to July 23,1951, for the courses of Machine Drafting and related subjects, Machine Drafting and Plastics Mold Design, and Piping Drafting; and that the tuition rate of $0.42 per hour of instruction, fixed by the Administrator, is the tuition rate to which the applicant is entitled for the said courses in the above period.
*135 16. Although plaintiff refused to sign a contract with the Veterans Administration it continued to train veterans, and, on November 9,1948, it made a demand on the Comptroller General for payment of its vouchers from July 1, 1948, at the rate of $715 per student. By letter dated February 8, 1949, the Comptroller General replied as follows:
There has been considered your letter of November 9, 1948, requesting the Claims Division of this Office to direct the Veterans’ Administration and the Administrator of Veterans’ Affairs to pay the charges for tuition and supplies, etc., representing services rendered in the education of veterans under Public Law 346, 78th Congress, for the months of July, August, September, and October, 1948, in the amount of $41,651.74. Also, consideration has been given to letter of January 4, 1949, from Mr. Theodore A. Glynn, Jr., attorney, submitting on your behalf a specific claim for payment by this Office of the referred-to amount, or, in the alternative, in the amount of $35,912.18, representing the charges found applicable to students enrolled prior to July 1, 1948..
It is, of course, evident that this Office is not authorized to comply with your request to direct the Veterans’ Administration or the Administrator of Veterans’ Affairs to make payment on the claim.
The jurisdiction conferred upon the General Accounting Office by section 236 of the Revised Statutes, as amended, 31 U. S. C. 71, is to settle and adjust — inde-Sendent of the executive departments — all claims and emands whatever by the Government of the United States or against it.
The claim in question covers amounts alleged to be due for veterans’ training for the period July 1 to October 31, 1948, payment of which has been refused by the Veterans’ Administration on the grounds that no contract covering the services involved is extant between the parties for any period subsequent to July 1, 1948, and that paragraph 36.288 of the regulations of that Administration requiring a contract as a prerequisite to payment is applicable to your present case. You contend (1) that the charges of your school have not increased to the extent specified in said regulation, in which case no contract would be required; (2) that, even if covered by the regulation, payment of the claim is authorized on the basis of an agreement dated May 14, 1948, wherein the existing rates of tuition, etc., of the Feener Technical Schools, Inc., were approved and au- *136 tliorized to remain in effect “unless changed by additional action by the Board of Collegiate Authority”; and (3) that, in the alternative, you are entitled to payment at your customary rates — approved in the letter of May 14, 1948 — for services furnished subsequent to July 1, 1948, to students who were enrolled prior to that date.
The referred-to letter of May 14, 1948, sets forth the various courses offered by the Feener Technical Schools, Inc.; the terms thereof; and the tuition rates applicable thereto, and recites an understanding that “it is understood and agreed by the Veterans’ Administration that these charges are the authorized charges for the courses as described and will remain in effect unless changed by additional action by the Board of Collegiate Authority.”
It appears that effective July 1,1948, there was issued by the Veterans’ Administration certain regulations providing pertinently as follows:
“It will be necessary for a contract to be negotiated by the Veterans’ Administration before payments for tuition, fees, books, supplies, equipment and other necessary expenses are made to the institution for the training of Part VIII trainees under the following circumstances: *****
“(2) Effective July 1,1948, contracts will be required when the customary charges do not exceed the rate of $500 for a full time course for an ordinary school year where a majority of the enrollment of the institution consists of veterans in training under Public Law 16 and 346, as amended, and where one of the following conditions prevails:
:Ji # # ❖ ❖
“The institution, although established prior to June 22, 1944, has increased its charges to all students subsequent to that date to an amount which, in the judgment of the manager, appears to be an unreasonable amount for the services rendered. In general an increase of less than 25% will not be considered unreasonable. However, if in the judgment of the manager, an increase of less than 25% in the case of any institution is considered to be unreasonable, the manager may submit a full report of the facts to the Assistant Administrator for Vocational [Rehabilitation and Education through the appropriate branch office and request a ruling as to whether or not a cost determination should be made.
“In the negotiation of contracts as required in this sub-paragraph, it will be necessary for the school to submit cost data. Agreed contract rates will not exceed rates *137 determined by the Veterans’ Administration to be fair and reasonable in accordance with the provisions of paragraph 36.287.”
This regulation was published in the Federal Eegister, Volume 13, No. 98, May 19,1948,13 F. E. 2697.
It is administratively reported that upon investigation it was determined that prior to April 1, 1946, the Feener Technical Schools, Inc., offered a course in machine drafting and mold design covering 30 weeks or 225 hours for a charge of approximately $195 for the complete course, but that as of April 1, 1946, with the approval of the Massachusetts Department of Education, the length of such course was increased to a period of 52 weeks or 1,312 hours with a charge of $715 therefor, plus $48.75 for books, supplies, and equipment; that on such facts it was determined by the Veterans’ Administration that notwithstanding the increased hours of instruction the increased tuition from $195 to $715 was such as to bring the Feener Technical Schools, Inc., within the purview of the regulation; and that based upon the cost data submitted it was determined that the charge of $715 for the course in question could not be accepted as a fair and reasonable charge.
With respect to the effect of the letter of May 14, 1948, the Veterans’ Administration has reported in part as follows:
“* * * it is considered that the letter agreement with the Feener Technical Schools, dated May 14, 1948, constitutes merely an agreement to the effect that under the then existing regulations a contract was not required, and that the charges set forth in that letter were the approved customary charges of the institution which were then payable by the Veterans’ Administration under the existing regulations. This agreement was voided by the regulation promulgated by the Veterans’ Administration to become effective July 1, 1948, as cited in the Federal Eegister.”
In matters of this kind this Office is inclined to regard as valid regulations issued by the Veterans’ Administration unless and until their validity has been negated by the courts. Also, an administrative interpretation by a department of its own regulations as applied to a certain case or set of facts is, of course, entitled to considerable weight. Notwithstanding these general propositions, however, this Office is of the view that the contentions made in support of your claim are not without some merit.
*138 In any event? it seems clear from a reading of the pertinent provisions of Public Law 346, approved June 22, 1944, that the Government is under an obligation to pay you some amount for the services rendered in connection with the training and instruction of veterans. See particularly Title II, section 400 (b), subsection (5). While the exact amount due is in dispute by reason of your disagreement with the Veterans’ Administration to the extent outlined above, the quasi-contrac-tural obligation to pay something for the services is nevertheless present.
Under the law you have the right — which you are free to exercise — to have these questions adjudicated in the courts. This Office is aware of the fact that for the past seven months you have received no payments whatever from the Government with respect to the veterans covered by the subject vouchers and that the financial burden thus imposed upon you now threatens the continued operation of your school. In these circumstances, I deem it only fair that some allowance be made to you at this time on account of the services covered by the present claim.
Accordingly, I am today issuing instructions to the Claims Division, General Accounting Office, to effect payment to you on the basis of a rate of $600 per student per 52-week course. This is to be understood only as a payment on account. Moreover, this action is not to be construed as indicating accord with any of the contentions you have made. And, finally, this Office would not be disposed to make any further payments to you as to the months here involved or as to subsequent months until the disputed matters shall have been settled either in the Veterans’ Administration or in the courts.
17. The plaintiff submitted vouchers to the Veterans Administration covering the period July 1, 1948, to August 23, 1949, for school tuition at the rate of $715 a year for day school and $357.50 a year for evening school, with other charges totaling $148,314.60. The General Accounting Office grouped these claims in three periods, for settlement purposes, as follows:
(1) July 1 to October 31,1948
(2) November 1,1948, to March 31,1949
(3) November 1,1948 to August 23,1949
*139 These claims, and the administrative disallowances on account of duplications and other errors, are summarized as follows:

18. On March 3,1949, the General Accounting Office issued settlement certificate No. 1727294, upon which the plaintiff was paid the sum of $36,495.65 against the first group of vouchers. This included payment in full of charges other than tuition in the sum of $3,129.56 and the payment on account of tuition at the rate of $600 a year, day school basis, or 600/7l5th (83.9161%) of the tuition claimed, in the sum of $33,366.09. The certificate states — “This allowance is understood to be only a payment on account as approved by the Comptroller General of the United States in decision B-82436, dated February 8,1949.”
19. By letter dated April 15, 1949, the Comptroller General advised the plaintiff that, pending judicial determination of the suit filed by plaintiff in the United States District Court for the District of Columbia against the Veterans Administration, a further payment would be made on the basis outlined in the decision of February 8, 1949, that is, at the rate of $600 a year for a day course of 52 weeks. Accordingly, the General Accounting Office, by settlement certificate No. 1762265, dated July 8, 1949, paid plaintiff the sum of $46,713.90 upon the second group of vouchers.
After deducting administrative suspensions of $450.39 against tuition and $89.48 against other charges, the payment for books, equipment, supplies and handling charges was made in the full sum of $4,276.17.
The payment on account of tuition was made on 600/715th (or 83.9161%) of $50,571.63, in the sum of $42,437.73.
*140 20. By settlements No. 2188805 and 2183806, dated October 6, 1953, the General Accounting Office made payments to plaintiff upon the third group of vouchers covering the period to Augusr, 23,1949, in the sum of $42,638.63.
After deducting administrative suspensions of $87.31 against tuitions and five cents against other charges, payments in the full sum of $2,473.16 were made for books, equipment, supplies and handling charges. The payment on account of tuition was again made at 600/7l5th (or 83.9161%) of $47,863.90, the net amount claimed after administrative suspensions, or the sum of $40,165.47.[3]
As indicated in findings 18, 19 and 20, settlements were made in full for boobs, equipment, supplies and handling charges for the period July 1,1948, to August 23,1949.
Payments on account of tuition for the same period were $115,969.29, leaving unpaid balances on the amounts claimed, after administrative suspensions, of $21,839.19; and with the adjustment by the General Accounting Office in settlement No. 1762265 of $388.31, the unpaid balance of the claim is $22,227.50.
21. In the event the defendant is sustained in its determination that, based upon plaintiff’s cost experience for the year ending April 30, 1948, plaintiff is entitled to a tuition rate for the period July 1, 1948, to August 23, 1949, of $602.86 a year for its 52-week day course and $284.87 for its so-called “26-week” evening course, the plaintiff would have earned tuitions totaling $115,636.80.[4] Since payments for this period totaled $115,969.29, the plaintiff has been overpaid the sum of $332.49 when this basis of calculation is used.
22. The plaintiff contends that in any event the tuition for evening courses should be one-half of the amount for day *141 courses, since the 52-week day course is equivalent to a 104-week night course. The Veterans Administration has, on at least one occasion (see finding 14), fixed a “fair and reasonable” tuition rate for the evening courses at exactly one-half of the rate fixed for the day courses. It appears reasonable to use the same formula for this period. By applying 50 percent of the day course rates, as determined by the Veterans Administration, to the tuition for evening courses, the amount earned for the period July 1, 1948, to August 23, 1949, would be $116,522.11,[5] and there would remain an unpaid balance of $552.82 due plaintiff.
23. In plaintiff’s second amended petition, filed January 25, 1954, an additional amount of $35,062.05 was claimed. This additional amount was referred to as the difference between the interim rate paid ($561.84) and the claimed rate ($715.00) for the period from August 24, 1949, to July 23, 1951.
From August 24,1949, to July 13,1950, the Veterans Administration paid the plaintiff under authority of Public Law 266. From July 14, 1950, to July 23, 1951, when the school ceased to train veterans after its eligibility to train veterans had been withdrawn by the Massachusetts Board of Collegiate Authority, plaintiff was paid pursuant to Public Law 610, which law superseded Public Law 266. For the entire period from August 24, 1949, to July 23, 1951, plaintiff has been paid the amount which the Veterans Administration found, pursuant to statutory authorization, to be fair and reasonable, namely, $567.84 per student per 52-week course.
conclusion of law
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that plaintiff is entitled to recover, and it is therefore adjudged and ordered that it recover of and from the United States five hundred and fifty-two dollars and eighty-two cents ($552.82).

 In the original cost statement this figure of the tuition rate ($290.95) was placed on Line 13. In the interest of clarity it has been dropped down to the proper line.

 A previous application for review under Public Law 266 to the Veterans’ Tuition Appeals Board had been returned for insufficiency.

 The GAO settlements have been set out showing the amounts for tuition and other charges separately, since only tuition rates are in dispute.

 Since the plaintiff’s tuition claims were vouchered on the basis of $715 for the day courses and $357.50 for the evening courses, the determination by Veterans Administration would represent 602.86/715th or 81.31608 percent of the net amount claimed for day courses and 284.87/357.50th or 79.68392 percent of the amount claimed for evening courses. The net amount claimed for day courses was the sum of $119,084.56 ($119,233.95 less Admin, suspensions of $537.70, plus General Accounting Office adjustment of $388.31) at 84.31608 percent gives the sum of $100,407.43. The claim for evening courses was $19,112.23 at 79.68392 percent gives the sum of $15,229.37, or a total of $115,636.80.

 Both 602.86/715th and 301.43/357.50th are equivalent to 84.31608 percent of the amounts claimed by plaintiff. The adjusted net claim of $138,196.79 at 84.31608 percent is the sum of $116,522.11.