**METROPOLITAN TRAINING CENTER, Inc. v. GRAY, Adm'r of Veterans' Affairs, et al.**

No. 10629.

United States Court of Appeals
District of Columbia Circuit.

Argued Nov. 8, 1950.

Decided Feb. 1, 1951.

Coleman Gangel, New York City, of the Bar of the Supreme Court of New York, pro hac vice, by special leave of Court, with whom James Perkins Parker, Washington, D. C., was on the brief, for appellant. David Carliner, Washington, D. C., also entered an appearance for appellant.

David A. Turner, Asst. Associate Solicitor, Veterans' Administration, Washington, D. C., with whom George Morris Fay, U. S. Atty. and Ross O'Donoghue and

Joseph M. Howard, Asst. U. S. Attys., all of Washington, D. C., were on the brief, for appellees.

Jack Wasserman, Washington, D. C., filed a brief on behalf of·the National Association of Private Schools as amicus curiae urging reversal.

Before EDGERTON, PROCTOR and BAZELON, Circuit Judges.

BAZELON, Circuit Judge.

Appellant, a New York-licensed trade school teaching watch repairing and jewelry engraving since 1946, sued in the District Court for a declaratory judgment and to enjoin appellee Gray, the Veterans' Administrator, and others from enforcing a regulation allegedly in excess of his statutory authority under the "G. I. Bill of Rights." The regulation[1] in question was issued by appellee Gray pursuant to his general regulatory authority[2] and interpreted the section of the Act providing that he "shall pay to the educational or training institution * * * for each person enrolled in full time or part time course of education or training, the *customary cost of tuition* * * *."[3] Included within its scope are those schools, other than non-profit institutions, in which a majority of the enrollment consists of veterans and the school, either (1) was established after June 22, 1944, or (2) if established prior to that date, has increased its charges to all students after that date to an "unreasonable" amount in relation to the services rendered. Such schools are required to submit certain cost data to the local officers of the Veterans' Administration who are to base the fees paid them not upon the "customary cost of tuition" but rather upon contracts negotiated with them by the Veterans' Administration. The contracts are to be in accordance with a prescribed formula designed to provide "fair and reasonable" compensation. Appellant insists that the Administrator lacks the authority to substitute the "fair and reasonable" standard of compensation for the statutory standard of "customary cost of tuition." Pointing to the fact that the framers of the law prescribed the "fair and reasonable" standard in certain specific contexts in the statute, appellant infers that such a standard may not be used except where so specified. In reply, the Administrator says that schools such as appellant's have no "customary cost of tuition"; that since the statute failed to make specific provision for such a contingency, it was proper for him to invoke his general regulatory authority under the Act to prescribe a payment formula. Pending suit, the school and the Veterans' Administration agreed that payments would be made pursuant to the new regulation, but without waiver of any rights by the school.

It seems obvious to us that this regulation was a valid exercise of the Administrator's authority. His objective was to fill the gap in the G. I. Bill resulting from the establishment of schools in response to a demand created by the Bill itself. Such schools could have had no "customary cost of tuition" at the time Congress passed the measure, if "customary" is used in the sense of something previously existing and well established. Nor could there be a valid reference, as a measure of fairness, to rates charged to non-veterans since the schools, their curricula and fees are geared primarily to the accommodation of veterans. In schools of this kind, non-veterans are apparently rarities whose fees are more likely to be determined by reference to those charged veterans than the other way around. For example, ninety-five per cent of the enrollment in appellant's school is veteran. It seems to us that, without safeguards such as those contained in the challenged regulation, Congress' overriding intention to protect the public treasury from overcharges would be defeated. Since the regulation falls clearly within the authority of appellee Gray, this suit cannot fit within any of the exceptions to sovereign immunity discussed in Larson v. Domestic &

1. 38 Code Fed.Reg.1949 Supp. §§ 21.570, 21.530.

2. 38 U.S.C.A. Ch. 12, Veterans Regulations Promulgated Pursuant to Ch. 12, Vet.Reg.No.1(a), Pt. VIII, Par. 9.

3. Id. at Par. 5 (emphasis supplied).

Foreign Corp.[4] and must fail. In view of the foregoing, it is unnecessary for us to consider the other defenses raised, such as lack of standing to sue or the existence of a statutory bar to judicial review.

We find no merit in the contention that, because the Administrator paid these schools the amount claimed by them to be their "customary cost of tuition" until June 30, 1948, there was some sort of acquiescence giving rise to a vested right. Nor do we agree with the argument that this regulation results in the supervision of state training institutions by the Veterans' Administration.

Affirmed.

4. 1949, 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628.