Edith ROBERTS, Louis Roberts and Richard Roberts, d.b.a. Roberts' Technical and Trade Schools, and David G. Baird and Harry J. Reicher, trustees of the Baird Fund

v.

UNITED STATES.

No. 477-52.

United States Court of Claims.

Jan. 15, 1958.

Loyal V. Buescher, Cleveland, Ohio, for plaintiffs. Paul W. Walter and Walter & Haverfield, Cleveland, Ohio, were on the brief.

David Orlikoff, Washington, D. C., with whom was Asst. Atty. Gen. George Cochran Doub, for defendant.

LITTLETON, Judge.

This is a suit by plaintiffs as the owners of a trade school operated in New York City to recover tuition for instruction furnished veterans pursuant to a series of contracts with the Veterans Administration.[1] Under these contracts plaintiffs' school furnished education and training to eligible veterans under the

1. Plaintiffs' school was originally established in 1947 as a corporation for profit under the laws of the State of New York and was then known as Roberts'

Servicemen's Readjustment Act of 1944, 58 Stat. 287, 38 U.S.C.A. Chap. 12A, Veterans' Regulation 1(A), Part VIII, (Public Law 346), and provided vocational rehabilitation of disabled veterans under the Act of March 24, 1943, 57 Stat. 43, 38 U.S.C.A. Chap. 12A, Veterans' Regulation 1(A), Part VII, (Public Law 16). Payment in full under these contracts has been withheld by defendant on the ground that plaintiffs had made false representations in supplying data relative to their cost of operations which data, according to regulation, had been filed with the Veterans Administration and used as a basis for the determination of the tuition rates in the contracts. Defendant has filed a counterclaim for the resultant overpayments.

Effective July 1, 1948, the Veterans Administration issued a regulation which became known as Change 4 to VA Manual 7–5, 13 F.R. 2695, 38 CFR 21.530 (1949 Ed.) It required, with respect to schools like plaintiffs which came into existence after June 22, 1944, had a majority of veterans, and were operated for profit, that thereafter tuition rates would be determined on a fair and reasonable basis predicated upon detailed financial statements or cost data to be submitted by the schools. This regulation was issued by the Veterans' Administrator pursuant to his regulatory authority and interpreted the sections of the statutes providing that he "shall pay to the educational or training institution * * * the customary cost of tuition * * *", as those sections apply to schools like plaintiffs'. Plaintiffs do not question its application here,

and its validity has been upheld by the courts. Metropolitan Training Center v. Gray, 88 U.S.App.D.C. 172, 188 F.2d 28; Feener Technical Schools, Inc. v. United States, 141 F.Supp. 777, 136 Ct. Cl. 94. See also Carroll Vocational Institute v. United States, 5th Cir., 211 F.2d 539. The pertinent provisions of this regulation are set forth in finding 6. In order to implement this new regulation the Veterans Administration issued a set of instructions which explained the purposes of the regulation and the method of setting out the financial data which was to be supplied. Attached to these instructions were forms for the schedules of costs to be submitted. Copies of the instructions and forms were mailed to plaintiffs as well as to all like schools in the New York area.

Plaintiffs' school had been training veterans under contracts with the Veterans Administration since July 1, 1947, and upon the expiration of the school's contract ending July 31, 1948, they submitted to the Veterans Administration, in compliance with the new regulation and on the forms provided, the required cost data. The statements were certified by plaintiffs as true and in accordance with the books and records of the institution, and purported to set out the school's cost of operations for the period July 1, 1947, to May 31, 1948. The summary sheets covering the two courses, auto body repair and furniture upholstery, offered by plaintiffs, are set forth in finding 9. Certain adjustments were made by the Veterans Administration with respect to some of the cost items, and the costs as adjusted and

Technical Trade School, Inc. On or about October 20, 1948, all of the stock then owned by Edith Roberts and Louis Roberts was sold to the Baird Fund, an unincorporated charitable trust. The school was operated by the Baird Fund until December 31, 1948, at which time the corporation was liquidated and the school was operated by the Baird Fund, d. b. a. Technical and Trade Schools, until June 30, 1951. On or about this

latter date the school was sold to the plaintiffs, Edith Roberts and Louis Roberts, who operated the school as a partnership under the name of Roberts' Technical Trade Schools. This partnership was expanded on or about November 1, 1951 to include Richard Roberts. The three partners together with David G. Baird and Harry J. Reicher, as Trustees of the Baird Fund, appear as the plaintiffs in this suit.

utilized in setting the tuition rates in plaintiffs' contracts are set out in finding 11. These adjusted costs for each course were divided by the student hours of instruction as reported by the school giving an hourly tuition rate of $.648 for the auto body course and $.769 for the furniture upholstery course. These tuition rates were offered to the school and accepted, and were embodied in plaintiffs' contracts covering the period August 1, 1948, to July 31, 1949.

On August 24, 1949, Congress enacted a statute, 63 Stat. 657, which provided that where one or more contracts providing a rate or rates of tuition had been executed for two successive years, the rate established by the most recent contract should be considered to be the customary cost of tuition. This statute effected a "freezing" of the above rates and eliminated the need for the submission of any further cost data. Payments to plaintiffs' school at the above rates continued under successive contracts until August 1, 1951, when payments were interrupted as a result of an audit of the school's records by the General Accounting Office.

During 1950 and 1951 the General Accounting Office undertook a survey of the education program for veterans as administered by the Veterans Administration in the New York area. Plaintiffs' school was selected at random as a representative school for audit. This audit revealed that the enrollment figures, submitted by the school in its cost data for the period of July 1, 1947, to May 31, 1948, and used as a divisor for the determination of the tuition rates, were inaccurate. It was found that the student hours of attendance for that period in the auto body course were 277,664 rather than 199,261 hours as reported by the school, and the student hours of attendance for the furniture upholstery course were 119,228 hours rather than 61,445 as reported by the school. This discrepancy is explained by the fact that the school took its hours of student attendance from those vouch-ers of the school which had, at the time of the submission of the cost data, been paid by the Veterans Administration. It did not include hours taught for which no billing had yet been made or for which payment had not yet been received from the Veterans Administration. It is, of course, quite apparent that the reporting of all of the school's expenses and only a fraction of the student hours of instruction, as represented by the paid vouchers, would serve to distort the cost experience of the school.

The cost statements submitted by the school had been prepared by Henry J. Reicher, a certified public accountant. Reicher, as a trustee of the Baird Fund which operated the school during part of the period involved here, appears as a co-plaintiff in this suit. He testified that although he obtained various items of cost from the books of the school, he took the figures for the student hours of attendance from the vouchers of the school which had been paid by the Veterans Administration. He further stated that although he knew that the method to be used in determining the tuition rate per hour was to divide the school's costs by the number of instruction hours, he used the figures from the paid vouchers because the schedule 11A provided on the Veterans Administration cost data forms on which the student hours were to be listed was subheaded "Paid Student Hours of Attendance." Despite such a heading, however, this schedule, as well as schedule 11 calling for the listing of hours of instruction, total the figures as "Student Hours of Instructions." Finding 10. The purpose of the language in the heading was to call the attention of the schools to the fact that to be included in the hours of attendance for which they were entitled to be paid, were permissible absences not to exceed 5 percent of the total number of hours of instruction. Thus, they were entitled to include in their tabulation of hours of instruction to be paid, hours during which a student

may have actually been absent provided the individual student's total absences did not exceed 5 percent of his total hours.

Apart from the fact that to a certified public accountant the computing of the costs by such a method, i. e., reporting all the expenses but only a fraction of the student hours, should have been notice in itself that a distorted result would be provided, the instructions which accompanied the forms dispelled any doubt. With respect to the pertinent schedules, the instructions read:

"An enrollment figure arrived at by dividing the gross income for the period covered by the cost statement by the tuition per student is not acceptable. Enrollment must be *actual enrollment* figures of student attendance and *student hours* taken from the attendance records of the institution." [Italics in the original.]

Mr. Reicher stated that he did not have the instructions, merely the forms, despite the fact that the instructions and forms were always treated as a single unit, and the further fact that it was difficult if not impossible to properly complete the forms in other respects without making use of the instructions. There is also the testimony of a Veterans Administration official that the instructions were utilized in discussions he had with Mr. Reicher with respect to the tuition rates. In the subsequent audit made by the General Accounting Office of over 100 trade schools in the New York area, only plaintiffs' school was found to have submitted its hours of attendance on the basis of paid vouchers rather than on the basis of total student attendance.

Defendant alleges that the method employed by plaintiffs in submitting their student hours of attendance was a misrepresentation of the school's cost of operations which resulted in the establishment of tuition rates in the subject contracts that were far and away greater than the fair and reasonable compensation contemplated by the regulation and allowed under the statutes.

Plaintiffs' position is that although they have not questioned the reasonableness and fairness of the rates as recomputed, they seek recovery on the basis of the original rates on the grounds that those rates were established by the Veterans Administration following an audit of plaintiffs' records and that any mistake made in the setting of the rates was that of the Veterans Administration. Thus, plaintiffs allege, the mistake, if any, was a unilateral one and therefore not grounds upon which a performed contract can be reformed or avoided.

The audit to which plaintiffs have reference was not an audit as that term is usually understood. What occurred was that following receipt of plaintiffs' cost statement, a field agent of the Veterans Administration visited plaintiffs' school and conducted what amounted to a spot check to verify certain items, including attendance figures, contained in the school's cost statement. It was a procedure utilized in all cases by the Veterans Administration. It was not contemplated that the investigation by the field agent was to be as detailed as that generally undertaken when an actual audit is made. When an audit of plaintiffs' records was subsequently made, the discrepancy with respect to the hours of instruction was discovered.

The shortest answer to plaintiffs' position is, of course, that to adhere to it would place a premium on attempts to pad cost figures. If discovered prior to execution of the contract, it can be explained away as a misunderstanding and corrected. If not discovered until later, as here, then the mistake is to be treated as being that of the party to whom the incorrect data had been supplied on the theory, as advanced by plaintiffs, that that party, having undertaken to spot check the data, and having not discovered the discrepancy, is now burdened with the mistake.

With respect to the law, the contracts which the Veterans Administration is authorized to enter into for the education and training of veterans are those and only those permitted under the applicable statutes and regulations. Here it is the provisions of the regulation which govern, and the rates to be paid under it were to be fair and reasonable. The rates under the subject contracts resulting as they did from the plaintiffs' submission of incorrect figures, certainly have not met that test.

In 1951 plaintiffs added courses in welding and slip cover and drapery work which the Veterans Administration treated as similar to the courses already offered and they applied the same rates as allowed on the others. While plaintiffs contest this action in treating these new courses as similar to the others, they have offered no evidence which would warrant our disturbing the Veterans Administration determination.

As a result of the General Accounting Office audit the rates as recomputed were $.467 for the auto body repair course and $.542 for the furniture upholstery course. While certain other adjustments were also made with respect to other items involved, they have not been put in issue here.

Plaintiffs are not entitled to recover and their petition will be dismissed.

Under the redetermined rates, the resulting overpayment of tuition to the school is $681,815.80, and defendant is entitled to recover that amount on its counterclaim. Unpaid vouchers in the net amount of $609,921.17 have already been withheld by defendant, and plaintiffs are entitled to an offset in that amount. Judgment therefore will be entered for defendant on its counterclaim against plaintiffs in the sum of $71,894.63.

It is so ordered.

FAHY, Circuit Judge, sitting by designation, JONES, Chief Judge, and MADDEN and WHITAKER, Judges, concur.