Jones, Chief Judge,
delivered the opinion of the court:
Plaintiff, a trade school, seeks payment for training veterans at a tuition rate higher than was received from the Veterans Administration.
The training was given under the Servicemen’s Readjustment Act of 1944,58 Stat. 284, Public Law 346,78th Congress. The two claims cover the periods from February 15,1951, to April 27,1954.
The plaintiff school began operations in 1949 and devoted its efforts almost exclusively to the training of veterans.
From June 1, 1949, to February 14, 1950, plaintiff gave instructions to veterans in shoe repairing at a contract rate of $0.70 per student hour. When this contract expired plaintiff submitted cost data pursuant to change 4 of the *725 regulations, which is set out in finding 6 and which had been effective since July 1, 1948. Change 4 required that fair and reasonable tuition rates be predicated upon detailed financial cost data to be submitted by schools of this type. This data, which covered the period from February 21,1949, to October 31,1949, was submitted as a basis for a new contract for the period of one year beginning February 15,1950.
The Veterans Administration analyzed the cost data and determined that the fair and reasonable rate for the course was $0.4959 per hoiir. However, since the school had been continuing to give instruction since the expiration of the previous contract on February 14, 1950, the Veterans Administration decided to pay the $0.70 rate for the period February 15 to May 14, 1950, and the $0.4959 rate for the remaining portion of the contract year.
Upon the expiration of the contract mentioned in the preceding paragraph a new contract was signed for the year beginning February 15, 1951. The plaintiff sought to have the same rate for the new contract, that is $0.70 for the first three months and $0.4959 for the balance of the year. The Veterans Administration found that the $0.4959 rate, being the rate established by the most recent contract, was the school’s customary cost of tuition and should apply for the entire year. The same rate was continued in subsequent contracts until February 14,1954.
The contract for the year beginning February 15, 1951, stipulated that it should be without prejudice to plaintiff’s right to appeal to the Veterans’ Education Appeals Board on the question of existing customary costs or a fair and reasonable rate, and the contract should be subject to revision by the board pursuant to statute and regulations.
Section 2 of Public Law 610, 64 Stat. 336, 338, provides in substance that in any case in which one or more contracts had been entered into in two successive years the rate established by the most recent contract should be considered the customary cost of tuition, and that if the Administrator should find that any institution had no customary cost of tuition he should fix a fair and reasonable rate of payment for tuition fees and other charges for the courses offered by such institution. It further provides that any educational *726 or trades institution which is dissatisfied with such a determination or with any other action of the Administrator made under the Veterans’ Education and Training Amendments of I960 should upon application be entitled to a review by a board to be known as the Veterans’ Education Appeals Board consisting of three members appointed by the President, and that the decision of such board with respect to all matters should constitute the final administrative determination. It was further provided that in no event should the board fix a rate of payment in excess of the amount allowable under the Servicemen’s ^Readjustment Act of 1944, as amended.
Pursuant to the provisions of the above section, the plaintiff filed an appeal with the Veterans’ Education Appeals Board for a review of the frozen rate determination of the Veterans Administration. It was the contention of plaintiff that the hourly rates should be $0.70 for the first three months and the $0.4959 rate for the remaining portion of the year ending February 14,1952. It requested the board to so find. The board was not requested to make a determination as to whether either of the rates mentioned was fair and reasonable, and no evidence concerning this question was offered at the hearing before the board by either party.
The board referred the matter to a hearing examiner who after a hearing and submission of briefs made an initial decision that the $0.70 rate for the first three months and the $0.4959 rate for the balance of the year was applicant’s customary cost of tuition.
The Administrator of Veterans Affairs took exception to this initial decision and requested a review by the Veterans’ Education Appeals Board. That board, on November 8, 1952, held that under Public Law 610 the tuition rate of $0.4959 per student hour is to be considered the customary cost of tuition for the applicant’s course in shoe repairing, and that it is the rate to which the applicant is entitled for the training of veterans in said course during the year beginning February 15,1951.
The plaintiff filed suit in the United States Court of Appeals for the Second Circuit on July 22, 1954, requesting a review of the decision of the Veterans’ Education Appeals Board. This suit was dismissed for lack of jurisdiction. *727 The plaintiff then filed suit in the United States District Court for the Southern District of New York on October 25, 1954. This suit also was dismissed, upon motion of the defendant, for lack of jurisdiction.
Plaintiff asserts in this suit that either it should have the $0.70 rate for the first three months of the year and $0,495.9 for the remaining portion, or that it should have the $0.70 per hour rate as a fair and reasonable tuition for the entire year.
There is not the slightest doubt that in the circiunstances as shown by the record in this case it was the duty of the Veterans Administration to fix a fair and reasonable rate based on cost data pursuant to the statute and regulations. The rate of $0.4959 per hour was determined by the Veterans Administration to be a fair and reasonable rate following its examination and analysis of the statement of costs which was submitted by plaintiff for the period February 21,1949, to October 31, 1949. Plaintiff was not required to and did not voluntarily submit a new statement of costs for any subsequent period.
The evidence does not disclose the cost data or estimates which were the basis of the $0.70 per hour rate provided in the contract for the period February 15, 1950, to May 14, 1950.
The trial commissioner who heard the evidence in this case found that the $0.4959 per student hour determined by the Veterans Administration was a fair and reasonable rate of payment for the plaintiff’s course in shoe repairing for all periods subsequent to May 14,1950. He also found that such determination was based on substantial evidence and was neither arbitrary nor capricious. We adopt that finding.
Defendant submits that plaintiff may not in this court raise the question of reasonableness of the rates fixed by the Veterans Administration since it failed to exhaust its administrative remedy by appealing that phase of the decision to the Veterans’ Education Appeals Board. In view of the definite finding by the Veterans Administration and by the trial commissioner’s additional finding, it is unnecessary to pass upon that additional defense. Feener Technical Schools v. United States, 136 C. Cls. 94.
*728 The Veterans’ Education Appeals Board, after a thorough review of the evidence that had been submitted before the examiner and after considering the briefs filed by both parties, and after citing a number of decisions[1] which had been made in reference to other claims of a similar nature, determined that the tuition rate of $0.4959 per student hour is to be considered the customary cost of tuition for the applicant’s course in shoe repairing and is the rate to which the applicant is entitled for the training of veterans in said course during the year beginning February 15,1951. "
We find no basis for holding that the decision of the Veterans’ Education Appeals Board was arbitrary, capricious, or lacking in substantial evidence. Field School of Upholstery and Allied Trades v. United States, decided March 5, 1958, 141 C. Cls. 807; Metropolitan Training Center v. Gray, 188 F. 2d 28; Feener v. United States, supra; Roberts v. United States, decided January 15, 1958, 141 C. Cls. 340.
The defendant is not pressing its counterclaim.
The plaintiff’s petition and defendant’s counterclaim will be dismissed.
It is so ordered.
Bryan, District Judge, sitting by designation; Laramore, Judge; Madden, Judge, and Whitaker, Judge, concur.
FINDINGS OE EAOT
The court, having considered the evidence, the briefs and argument of counsel, and the report of Trial Commissioner Paul H. McMurray, makes the following findings of fact:
1. The plaintiff, B.&S. Lenox Trade School, Inc., is, and at all times material herein was, a corporation for profit duly organized and existing under the laws of the State of New *729 York, having its present office and principal place of business at 1185 East 15th Street, Brooklyn SO, New York.
2. For all periods pertinent to this action, the school operated by plaintiff was licensed and approved by the Education Department of the State of New York and was therefore authorized to furnish education and training to eligible veterans under Public Law 346, 78th Congress, enacted June 22, 1944 (58 Stat. 287)
3. From February 21, 1949 to April 27,1954, the plaintiff gave instruction to eligible veterans in a 1,000-hour course in shoe repairing.
4. This action is brought to recover the difference between the amount plaintiff has received from the defendant, acting through the Veterans Administration, for the training of substantial numbers of Public Law 346 veterans from May 15, 1950 to April 27, 1954 at the rate of $0.4959 per student hour, and the amount it would have received had the rate been $0.70 per student hour which plaintiff alleges should have been paid. In the alternative, the action is brought to recover the difference between the amount plaintiff has i*e-ceived from the defendant for the training of veterans from February 15 to May 14,1951; from February 15 to May 14, 1952; from February 15 to May 14,1953; and from February 15 to April 27, 1954, at the rate of $0.4959 per student hour and the amount it would have received had the rate been $0.70 per student hour, which plaintiff alleges should have been paid.
5. Plaintiff had a series of written contracts with the Veterans Administration for the course in shoe repairing, of which the first four were dated and numbered as follows:
(a) V3006V-369 covering the period from February 15, 1949 to May 31, 1949, providing for education and training of Public Law 346 veteran trainees at a tuition rate of $0,537 per hour.
(b) V3006V-477 covering the period from June 1, 1949 to February 14, 1950, providing for education and Training of Public Law 346 veteran trainees at a tuition rate of $0.70 per hour. This contract was supplemented, effective October 6, 1949, to provide for vocational rehabilitation of Public Law 16 trainees at the same tuition rate.
*730 (e) V3006V-761 covering tbe period from February 15, 1950 to February 14, 1951, providing for education and training of Public Law 346 trainees and for vocational rehabilitation of Public Law 16 trainees, respectively, at a tuition rate of $0.70 per hour through May 14, 1950 and a tuition rate of $0.4959 per hour from May 15,1950.
(d) V3006V-1088 covering the period from February 15, 1951 to February 14, 1952, providing for education and training of Public Law 346 trainees and for vocational rehabilitation of Public Law 16 veteran trainees, respectively, at a tuition rate of $0.4959 per hour.
6. Prior to the date of the above contracts, and effective ■July 1, 1948, the Veterans Administration issued Change 4 to VA Manual M 7-5 (38 C. F. E. 21.530), the controlling agency regulations, which required that fair and reasonable tuition rates be predicated upon detailed financial statements, hereinafter referred to as cost data, to be submitted by profit schools such 'as that operated by the plaintiff. Change 4 was still in effect on February 15, 1950. The change referred to involved the addition of certain sub-paragraphs to sections in Part 36 — Eegulations Under Servicemen’s Eeadjustment Act of 1944, pertinent parts of which are as follows:
36.287. Determination of fair and reasonable compensation.
' The determination of fair and reasonable compensation by the manager, as in the case of courses of less than 30 weeks or courses of 30 weeks or more in institutions other than non-profit, will require the submission by the educational or training institution of detailed certified financial statements showing the most recent actual cost experience of the institution for the specific courses involved including cost data on the items of expense which will be used for the determination of fair and reasonable compensation, the basis on which teaching salaries and other expenses have been allocated to the courses involved, and the number of students enrolled and the number of clock hours or credit hours during the period covered by the cost data. In the case of new courses for which no actual cost experience is available, estimated costs may be submitted.
*731 (a) For non-profit institutions when course is less than SO weeks.
(b) For institutions other than non-profit for either courses of less than SO weeks or courses of SO weeks or more.
Fair 'and reasonable compensation for schools operated for profit will not exceed the actual or estimated costs to the institution for providing the instruction, plus an allowance for profit as indicated below. In determining the fair and reasonable compensation all expenses, except expenses for sales commissions and promotional plans, which are reasonable and necessary for the operation of the courses involved will be included in the cost statement and such expenses will be grouped into the general categories set forth below within the limits designated.
$ $ $ ‡ $
7. Actual administrative expenses which are considered reasonable and necessary in the operation of the school and are properly allocable to the courses under review. * * * All cases where requested administrative costs exceed 15% of subparagraphs (1) (2) (5) and (6) of this paragraph shall be forwarded to Assistant Administrator for Vocational Rehabilitation and Education, Central Office for review and approval.
(c) When the manager has completed his analysis of the cost data.
When the manager has completed his analysis of the cost data, he will determine on the basis of the total number of all students trained and cost of the items listed herein, after reflecting known changes in costs, whether the customary charges of the educational or training institution are fair and reasonable. In making this determination the manager will give consideration to the fact that it is not fair and reasonable for the Veterans Administration to pay a charge based on the full cost of operating an institution under abnormal situations, such as periods when enrollments in the institution are far below the normal capacity and expectancy of the institution, or where operating costs are greatly in excess of normal operating costs for other comparable institutions in the same general locality. Contracts, when required, will be negotiated to provide payment not to exceed the ¡amounts determined by the manager to be fair and reasonable as provided herein.
*732 36.288 (b) (2) * * *. In the negotiation of contracts as required in this subparagraph, it will be necessary for the school to submit cost data. Agreed contract rates will not exceed rates determined by the Veterans Administration to be fair and reasonable in accordance with the provisions of par. 36.287.
7. The New York Regional Office of the Veterans Administration issued a set of mimeographed instructions which explained the method of setting out the financial data upon which tuition rates were to be based. Attached to these instructions were forms for the schedules of costs to be submitted to the Regional Office. A copy was mailed to the plaintiff in November 1949 simultaneously with a request that the plaintiff submit cost data for the purpose of negotiating a contract for the period commencing February 15,1950.
8. Contracts No. V3006V-369 and No. V3006V-477 had been negotiated and signed prior to the mailing of the applicable instructions. Details of the negotiations on these contracts are not in evidence and the cost data or other estimates upon which the respective contract prices of $537 and $700 per student per 1,000-hour course were computed and agreed upon are not in evidence.
9. Public Law 266, 81st Congress (an item in the Independent Offices Appropriation Act for the fiscal year 1950, approved August 24, 1949, 63 Stat. 631,653) provided that, in the absence of a customary cost of tuition, the Administrator was to “forthwith fix and pay, or cause to be paid, a fair and reasonable rate of payment for tuition, fees and other charges for the courses offered xxx”. Neither party has claimed that plaintiff had a customary cost of tuition for its 1,000-hour course in shoe repairing as of February 15, 1950, the date of the third contract, No. V3006V-761.
10. In December 1949, the plaintiff submitted cost data based On its actual cost experience for the period from February 21, 1949 to October 31, 1949, in accordance with the request of the V. A. New York Regional Office. The summary sheet for the cost data was as follows:

*733

Attached to the summary sheet were detailed analyses of each of the categories listed, following the suggested form which had been sent to the school by the Veterans Administration along with the instructions for executing these forms.
11. In the above statement, item 15 “Enrollment”, is not an actual enrollment but is a computation which plaintiff made without reference either to student registration or to the number of students in attendance at the various sessions. As shown hereinafter, plaintiff school operated two full-time day courses and several part-time evening courses during the period covered by the statement of costs.
Plaintiff produced no record of student registration or of student attendance at the various sessions severally, but based its claimed enrollment on a computation in which it divided the sum total of attendance hours in the period by the number of hours required for one full course of instructions and arrived at 97.11 as the student enrollment. The sum total of attendance hours in the period is a combination figure which includes attendance by an undisclosed number of students at both full-time and part-time courses in the period.
Having thus arrived at an enrollment of 97.11 students,, plaintiff divided its total claimed expenses in the period, $77,272.13, by 97.11 and set forth the result as item 16 on. the statement, “Computed Tuition per Student, $795.72”.
*734 12. During the period of the statement of costs, that is, from February 21, 1949 to October 31, 1949, plaintiff operated under two contracts, viz, Contract V3006V-369 dated February 15,1949, and Contract V3006V-^477, dated June 1, 1949. The course offered by the school was of one type, shoe-making or repairing, the completion of which required 1,000 hours of instruction. Among other things, the contracts provided that instruction would be given during the following hours:

Contract V3006V-369.

Morning Session: 8 am. to 1 pm. Monday through Friday.
Afternoon Session: 1 pm. to 6:30 pm. Monday through Friday.
Evening Session: 7 pm. to 10 pm. Monday through Friday.
Evening Session: 7 pm. to 10 pm. Monday through Thursday, with the provision that “The school may offer the following additional sessions effective May 2, 1949:
11)7 pm. to 11 pm. Monday, Wednesday and Friday.
(2) 7 pm. to 11 pm. Tuesday and Thursday and 9 am. to 1 pm. on Saturday”.

Contract VSOOBY-JW

Morning Session: 8 am. to 1 pm. Monday through Friday.
Afternoon Session: 1:30 pm. to 6:30 pm. Monday through Friday.
Evening Session: 7 pm. to 10 pm. Monday through Friday.
Evening Session: 7 pm. to 10 pm. Monday through Thursday.
Evening Session: 7 pm. to 11 pm. Monday, Wednesday and Friday.
Evening Session: 7 pm. to 11 pm. Tuesday and Thursday, and 9 am. to 1 pm. on Saturday.
“The school will be closed on the following holidays: New Year’s Day, Lincoln’s Birthday, Washington’s Birthday, Decoration Day, July 4th, Labor Day, Thanksgiving Day, Christmas Day”.
13. The above contract schedules indicate that several separate and distinct classes were in progress during the period of February 21, 1949 to October 31,1949, but in the absence of information as to student registration or enrollment, or *735 student attendance at each session, of which, there is none in evidence, it is not possible to determine accurately how many students received instruction in the statement period, or how many hours of instruction were received by each en-rollee, and there is no evidence that any of the several courses were completed in the period.
14. Subsequent to the receipt by it of plaintiff’s cost statement, defendant made an examination of plaintiff’s books and records for the purpose of verifying the dollar amounts of plaintiff’s expenditures in the period, and also for the purpose of determining whether plaintiff’s claimed cost of tuition per student constituted 'a “fair and reasonable rate of payment for tuition, fees and other charges for the courses offered” as provided by Public Law 266 (63 Stat. 631). This statute (p. 653) prohibited expenditure of funds for tuition “For any veteran for a course in an institution which has been in operation for a period of less than one year immediately prior to the date of enrollment in such course unless such enrollment was prior to the date of this Act”, i. e., August 24, 1949. The school’s enrollment, as a consequence of such provision, was abnormally low during part of the period to which the cost data applied. The contract officer considered this to be an abnormal situation within the meaning of paragraph (c) of change 4 with respect to periods when enrollments are far below normal capacity and expectancy. He made a calculation of the total enrollment for the contract period of one year by using the actual number of students enrolled on March 3,1950.
In verifying the dollar amounts, defendant disallowed some small items of expense and transferred part of other items from one category of expense to another. Most of these, however, involved minor values and did not materially affect the rate shown on the statement:
(a) With respect to plaintiff’s claimed expense of $25,224.16 for Consumable Instructional Supplies however, defendant considered that this expense, when expressed as a cost of $0.2597 per hour, was excessive, and in accordance with the provision in sub-paragraph 36. 287 (c) of the Y. A. Regulations, it determined that a fair and reasonable allowance for this item was $0,141 *736 per hour. This allowance was based on the amount allowed and paid to another, but similar, school in the same general locality. Defendant later revised this $0,141 per hour rate and increased it to $0.1463 per hour, which was the rate finally approved by the contracting-officer and paid to plaintiff.
Plaintiff’s actual expenses for this item, as shown in its Statement of Costs, amounted to $25,224.16 in a period of eight and one-half months. Projected to a calendar year basis this represents an annual expenditure at the rate of $35,610.58 for items in this category.[1]
As indicated in Finding 16 infra, the rate of $0.1463 per hour which defendant adopted for its estimate of allowable cost represents an annual expenditure at the rate of $38,076.04 for Consumable Instructional Supplies.
(b) Plaintiff’s actual administrative costs for the period, as shown by schedule 5 of its statement, represents 38.49% of the sum total of Items 1, 2, 3, and 4 in the Statement of Costs. Plaintiff, however, did not include its actual costs for this item, but based its charge for an administrative allowance on 15% of the sum total of Items 1, 2, 3, and 4, which, in dollars, amounted to $8,477.97. This sum, when projected to a calendar year basis amounts to $11,968.90.
Defendant verified plaintiff’s actual costs as shown on its detail schedule 5 attached to the Statement of Costs, but for the purpose of its own estimates it used the 15% formula m the same manner as plaintiff had done. Defendant’s computation resulted in an allowance of $14,301.96 for this item, on a calendar year basis, as shown in Finding 16.
15. Following its adjustment of the dollar amount of plaintiff’s claimed costs as indicated above, defendant proceeded to make its own calculations and estimate of the cost of tuition for the determination of a “fair and reasonable” rate of payment. For this purpose it projected the adjusted costs to a full calendar year basis, the amount of which it computed to be $129,061.46. It then divided this $129,-061.46 by the number of student attendance hours in a calendar year, in order to arrive at the cost per student hour. Defendant estimated the number of student attendance hours in a calendar year as follows, using as a basis the number of students who were actually enrolled on March 3,1950:
*737 121 students at 25 hours per week_ 3, 025 hours.
82.5 students at 24 hours per week_ 1,980 hours.
Total student hours per week_ 5, 005 hours.
5,005 X 52 weeks=260,26O student hours per calendar year.
From these figures defendant arrived at a cost of tuition per hour of $0.4959, or $495.90 for a 1,000-hour course per student.
16. The rate of $0.4959 was approved by the contracting officer as being a fair and reasonable rate of tuition for the 1,000-hour course in shoe repairing, on May 25, 1950. A summary of the computed costs contributing to this rate is as follows:

17. Contract No. V3006V-477, under which plaintiff had been operating, expired on February 14, 1950, but plaintiff continued to train veterans pending the execution of a new contract.
Based upon its examination and analysis of plaintiff’s costs as noted above, and upon its own estimates defendant determined that a fair and reasonable rate of payment was $0.4959 per student per hour for the course offered by plaintiff, but plaintiff declined this offer on the ground that it was entirely inadequate, and it was not until May 29, 1950 that negotiations were completed and a new contract, No. V3006V-761, was signed.
This new contract provided for payment to plaintiff at a rate of $0.70 per hour for the expired period, that is, from *738 the expiration of Contract V3006V-477 on February 14,1950 to May 15, 1950, and at the rate of $0.4959 per hour thereafter until the expiration of the contract on February 14, 1951. Accordingly, under contract V3006B-761, plaintiff was paid at the rate of $0.70 per hour from February 15, 1950 to May 14, 1950, and at the rate of $0.4959 per hour from May 15,1950 to February 14,1951.
18. "When contract No. V3006V-761 expired on February 14,1951, a new contract, No. V3006V-1088, was executed for the following year, that is, from February 15, 1951, to February 14, 1952. Plaintiff sought unsuccessfully to have the same terms of payment incorporated into the new contract as ¡appeared in the old one, that is, $0.70 per hour for the first three months and $0.4959 per hour for the remaining nine months. The Veterans Administration, on the other hand, determined that $0.4959 per hour, being the most recent rate established by the most recent contract and the rate effective on July 13, 1950 (the effective date of Public Law 610), was the school’s customary cost of tuition for all contractual periods subsequent to the expiration date of Contract V3006V-761, and consequently incorporated the rate of $0.4959 per hour for the entire period of the new contract. The same rate was also continued in subsequent contracts, and the school continued to give the course at a tuition rate of $0.4959 per hour until February 14, 1954. The contract for the period February 15, 1951 to February 14, 1952, No. V3006V-1088, contained the following provision :
“The execution of this contract shall be without prejudice to the B. & S. Lenox Trade School, Inc. to appeal to the Veterans Education Appeals Board the question of the existence of customary costs or a fair and reasonable rate: and the contract shall be subject to any revision made by the said Board pursuant to the governing statutes and regulations.”
19. Section 2 of Public Law 610, 81st Congress (64 Stat. 336), provides, inter aMa> that:
* * *. In any case in which one or more contracts providing a rate or rates of tuition have been entered into in two successive years, the rate established by the most recent contract shall be considered to be the customary *739 cost of tuition notwithstanding the definition of “customary cost of tuition” as hereinbefore set forth. For the purpose of the preceding sentence “contract” shall include contracts under Public Law 16 (Seventy-eighth Congress, March 24, 1943), Public Law 346 (Seventy-eighth Congress, June 22, 1944), or any other agreement in writing on the basis of which tuition payments have been made from the Treasury of the United States. If the Administrator finds that any institution has no customary cost of tuition he shall forthwith fix and pay or cause to be paid a fair and reasonable rate of payment for tuition, fees, and other charges for the courses offered by such institution. Any educational or training institution which is dissatisfied with a determination of a rate of payment * * * shall be entitled, upon application therefor, to a review of such determination * * * by a board to be known as the “Veterans’ Education Appeals Board” consisting of three members, appointed by the President. * * * The decision of such Board with respect to all matters shall constitute the final administrative determination. In no event shall the Board fix a rate of payment in excess of the maximum amount allowable under the Servicemen’s Readjustment Act of 1944, as amended.
20. Pursuant to Section 2, Public Law 610, supra, and to the reservation of the right of appeal in Contract V3006V-1088, plaintiff filed an application on April 9, 1951 with the Veterans’ Education Appeals Board for a review of the frozen rate determination of the Veterans Administration. Plaintiff contended in its application that the hourly rates in Contract V3006V-1088 should be $0.70 for the period February 14,1951 to May 14,1951, and $0.4959 for the period from May 14, 1951 to February 14, 1952, and requested the board so to find. The board was not requested to make a determination as to the fair and reasonable quality of either of the rates mentioned, and no evidence concerning this question was offered at the hearing before the board by either party.
21. The board referred the matter to a hearing examiner. After conducting a hearing and reviewing the briefs submitted by the plaintiff and the Administrator of Veterans Affairs, the examiner rendered an initial decision on May 15,1952, in which he concluded that
*740 Applicant has acquired a customary cost of tuition of $0.70 per student hour for the period of February 15 to May 14, and $0.4959 from May 15 to February 14, and said rate of remuneration is Applicant’s customary cost of tuition which is to be incorporated into Contract V3006V-1088, and it is so OBDEBED.
22. The Administrator of Veterans Affairs took exception to this initial decision requesting a review by the Veterans’ Education Appeals Board. On November 8,1952, the board issued a final decision in which it held that:
By virtue of Public Law 610, the tuition rate of $0.4959 per student hour is to be considered the customary cost of tuition for the applicant’s course in Shoe Bepairing, and is the rate to which the applicant is entitled for the training of veterans in said course during the period from February 15,1951 through February 14,1952; and Contract V3006V-1008 properly so provides.[2]
23. Plaintiff filed suit in the United States Court of Appeals for the Second Circuit on July 22, 1954, requesting review of the decision of the Veterans’ Education Appeals Board. Upon motion of the defendant, this suit was dismissed for lack of jurisdiction. Plaintiff then filed suit in the United States District Court for the Southern District of New York on October 25, 1954. This suit also was dismissed, upon motion of the defendant, for lack of jurisdiction.
24. Plaintiff’s petition sets forth two causes of action. For the first cause of action it contends that pursuant to the provision in Section 2 of Public Law 610 the payment arrangement provided in Contract V3006V-761 should have been continued, and that Contract V3006V-1088 and all subsequent contracts should have provided for payment to plaintiff at the rate of $0.70 per hour for the first three months of each contract period, and at the rate of $0.4959 per hour for the remaining nine months of each succeeding contract period.
Plaintiff’s claim in this first cause of action is for the difference between the two rates, that is, $0.2041, applied to a total of 160,031 hours, or in the aggregate, $32,662.32.
*741 For a second cause of action plaintiff contends that of the two rates, $0.70 per hour was the fair and reasonable rate of tuition for plaintiff’s 1,000-hour course on February 15, 1950, and that the rate of $0.4959 as determined and paid by the Veterans Administration is arbitrary.
Plaintiff’s claim in this second cause of action is for the difference between the two rates, applied from May 15,1950 to February 14, 1954, to a total of 798,450 hours, or, in the aggregate, $162,963.63.
25. The respective rates of $0.70 and $0.4959 per hour which appear in Contract V3006V-761 do not reflect any difference in the instruction to be provided by plaintiff school or in the costs normally involved in such instruction, and there is no contention that such instruction and costs varied in the contract period. The two rates apply to identical instruction and without qualification excepting that payment at the rate of $0.70 per hour was limited to a period of time which already had elapsed when the contract was prepared and signed in May 1950.
• 26. The Veterans’ Education Appeals Board in its decision held that on July 13, 1950, the date of the enactment of Public Law 610, the rate of payment then provided and being paid under Contract V3006V-761 constituted the most recent contract between the parties, and thereby established $0.4959 per hour as the customary cost of tuition within the meaning of Section 2 of Public Law No. 610.
That decision of the Veterans’ Education Appeals Board, with respect to the customary cost of tuition, was not arbitrary or capricious, and was based upon substantial evidence.
27. The rate of $0.4959 per hour was determined by the Veterans Administration to be a fair and reasonable rate following its examination and analysis of the statement of costs which was submitted by plaintiff for the period February 21, 1949 to October 31, 1949, and upon its own estimates in evidence. Plaintiff was not required to and did not voluntarily submit a new statement of costs for any subsequent period.
The evidence does not disclose what cost data or estimates were the basis of the $0.70 per hour rate provided in *742 Contract V3006V-761 for the period February 15, 1950 to May 14,1950.
28. The rate of $0.4959 per student hour, determined by the Veterans Administration, was a fair and reasonable rate of payment for plaintiff’s course in shoe repairing for all periods subsequent to May 14, 1950. It is based on substantial evidence and such determination was not arbitrary, capricious, or grossly erroneous.

Defendants Oowiterelaim

29. For a counterclaim, defendant contends that the provisions in Contract V3006V-761 for the payment to plaintiff at the rate of $0.70 per hour for the period February 15, 1950, to May 15, 1950, by the Veterans Administration, was ultra vires. On this ground defendant seeks to recover alleged overpayments to plaintiff in the amount of $14,653.36 for the above period.
Paragraph 36.287 of the Veterans Administration Regulations provides, inter alia, that:
“In the case of new courses for which no actual cost experience is available, estimated costs may be submitted.”
The incorporation of the $0.70 rate in Contract V3006V-761 for a period of three months was the result of negotiation between the parties based on estimates. The details of the negotiations are not in evidence. The incorporation of the $0.4959 rate in- Contract V3006V-761 was based upon a determination by the Veterans Administration after examination and analysis of plaintiff’s cost statement in evidence.
There is no satisfactory evidence to show that the examination and analysis of plaintiff’s cost statement by the Veterans Administration was completed on February 15, 1950, or until approximately May 29, 1950, the date when contract V3006V-761 was prepared and signed by the parties.
Incorporation by the Veterans Administration of a $0.70 rate in Contract V3006V-761 for the period of time which had elapsed before the contract was signed, was not unreasonable. It was obviously done to take care of a period of túne during which the school was operating before *743 analysis of the cost data was completed and the contract signed.
CONCLUSION OE LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that neither the plaintiff nor the defendant is entitled to recover, and the petition and counterclaim are therefore dismissed.

 The following is from decision of the Veterans’ Education Appeals Board in the case of Pierce Technical Schools v. Administrator, Docket No. 33, November 29, 1951:
“If the sequence is of the required length, the rate at the end of it becomes the customary rate no matter how much higher or lower it may have been earlier in the sequence. The only thing the earlier part of the sequence can possibly furnish is the faet of its existence and whatever of cost experience it may have furnished to the determination of the rate at the end of it.”

 $25,224.16 -7- 8.5 X12 = $35,610.58.

 Error in the original. Should be Y3006V — 1088.